# William H. Thurston *vs.* Benjamin Ballou & another.[1]

Norfolk. February 10, 1987. — March 30, 1987.

Present: Grant, Kaplan, & Brown, JJ.

*Negligence,* Violation of law, Violation of regulation, Motor vehicle, Use of way, Comparative, Proximate cause. *Proximate Cause. Practice, Civil,* Question by jury, Instructions to jury.

Where both a State statute and a Federal regulation required commercial vehicles to carry warning devices for use in the event a vehicle became disabled, the higher standard prescribed by the regulation governed the conduct of the driver of a disabled tractor-trailer. [739-740]

At the trial of a negligence action arising from the collision of a truck, operated by the plaintiff, and an immobilized tractor-trailer, which had become disabled approximately five and one-half hours earlier, the jury were warranted in finding the driver of the tractor-trailer causally negligent, where there was evidence tending to prove (a) that the defendant driver had violated a Federal regulation requiring commercial vehicles to carry warning devices which, if carried, might have warned the plaintiff when he approached the disabled vehicle over the crest of a hill; (b) that a State police officer had furnished the driver flares which he might have set in succession so as to leave one burning when the plaintiff approached; and (c) that during the five and one-half hours the driver had made no serious effort to summon assistance. [740-741]

At the trial of a negligence action, it was within the judge's discretion, in response to inquiries put by the jury, to describe to them the consequences of their answers to special questions on comparative negligence. [741-743]

Civil action commenced in the Superior Court Department on October 19, 1978.

The case was tried before *James P. Lynch, Jr.,* J.

*William C. Gardiner* for the defendants.

*Ralph C. Good, Jr.* (*John F. McCarty, Jr.,* with him) for the plaintiff.

[1] AAA Transportation Corporation.

KAPLAN, J. The plaintiff Thurston was severely injured in a road accident and, in a regime of "comparative" negligence, has won a jury verdict and judgment representing one-half of the damage he suffered through the fault shared between the defendant Ballou (and thus Ballou's corporate employer, also a defendant) and himself. The defendants appeal, claiming that the trial judge committed error, first, in denying their motions for a directed verdict at the close of the plaintiff's case and again at the close of all the evidence, and, correspondingly, in denying their motion for judgment n.o.v. Connected is a point about the application of Federal regulations or a Massachusetts statute regarding the carrying and deploying of safety warning devices. Second, the defendants say the judge was wrong to enlighten the jury, in response to their questions, about the consequences of a verdict that charged both sides with negligence. We affirm the judgment.

Summarized, the evidence ran thus. On March 17, 1978, Ballou, a "platform man" (i.e., freight loader) and driver, was taking a B model Mack tractor and a forty-five foot box trailer loaded with linoleum from Norwood, Massachusetts, to his employer's terminal in Cranston, Rhode Island. About 8:10 P.M. Ballou entered Interstate Route 95 at Neponset Street, near Norwood; for several miles he traveled south on a gradual rise (2.22 feet per hundred). He began experiencing engine trouble and as he reached the crest of the incline about 8:30 P.M. he lost most of his power. Some 200 feet downward from the crest (the down grade was somewhat steeper, 2.32 percent) he pulled the rig into the breakdown lane and stopped. He tried to start the motor, but failed.

About 1:00 A.M. the plaintiff, Thurston, started from Logan Airport, Boston, south on Route 95, driving a one and one-half ton truck with an empty sixteen-foot storage box. Headed for his employer's terminal at Walpole, Massachusetts, he intended to get off Route 95 at the Route 1 exit about 450 feet past the spot where (unknown to him) Ballou's vehicle was sitting. Fifteen hundred feet from the crest of the incline, Thurston, riding the middle lane of the three lanes, noticed a car back of him bobbing left and right as if to pass him.

Accordingly, Thurston began moving to the right hand lane. Coming over the crest (unlit) he continued his move to the right while somewhat slowing down from his pace of forty miles per hour. Suddenly, a hundred feet ahead of him he saw the reflection from three reflectors at the back of Ballou's trailer. At that point he could not make out whether the trailer was stationary or moving. In his left side-view mirror he saw the car that had been behind passing him in the center lane. Still moving to the right and beginning to cross into the breakdown lane, Thurston now saw Ballou's trailer only thirty or forty feet ahead. Thinking he could not swerve to the left because of the passing car. Thurston braked, killed his engine, dived for his floor boards, and felt a crushing impact. Ahead in the cab of the tractor, Ballou was also shaken and injured. The time was about 2:00 A.M.

1. We may now add and assess evidence bearing on the defendants' first claim, that a rational jury could not find Ballou causally negligent. It is conceded that when Ballou set out from Cranston to pick up at Norwood he knew that he had no safety apparatus — for example, flares or reflective triangles — to warn oncoming traffic of an immobilized vehicle, apparatus especially important when there is a hindrance to sight such as an obstructing hill. The Massachusetts statute requiring the carrying and use of warning devices, specifically three flares, applies by its terms to commerical vehicles becoming disabled upon the traveled portion of a street or highway.[2] There was evidence the tractor-trailer was wholly in the breakdown lane, although Thurston testified that two of its rear tires were in the right hand travel lane. Thus the defendants can contend there was no violation of statute which, if shown, would be

[2] General Laws c. 85, § 14B, as amended through St. 1974, c. 529, § 1, requires the operator of a commercial vehicle having a gross weight in excess of five thousand pounds to carry at least three safety flares, defined as either pot torches, electric lamps, or other devices meeting Federal Motor Vehicle Safety Standard No. 125. When his vehicle becomes disabled within three hundred feet of the crest of a hill, the statute requires the operator to set out the flares and to place one of them in the direction of approaching traffic so as to "afford ample warning to other persons using such way, and in no case less than one hundred feet, nor more than three hundred feet, from the disabled vehicle." (We omit sundry details.)

some evidence of negligence. See *Harsha* v. *Bowles,* 314 Mass. 738, 741 (1943). However, the plaintiff contends, the judge agreed, and we do also, that the Federal regulations, not the State statute, controlled because the former impose "a higher standard of care" than the latter. See 49 C.F.R. § 392.2 (1977). The regulations, promulgated by the Federal Highway Administration, require warning devices to be put out when a vehicle breaks down on the travel part or the shoulder of a highway and require a driver to carry more than merely flares.[3] See 49 C.F.R. §§ 392.22, 393.95 (1977). Thus there was a violation which counted as some evidence of negligence, and so the judge instructed the jury. But the defendants say that the violation, if it occurred, was immaterial because flares, if set out shortly after the vehicle came to rest, as the regulations require, would have burned out before 2:00 A.M.

The defendants' proposition seems to be that, once the Federal regulations are gotten round in this way, Ballou is washed clean of all responsibility. This idea approaches the perverse. It starts with confounding the Federal regulations. The minimum Ballou might have carried to comply with the regulations was flares plus red flags,[4] and flags could have been posted at the crest for as long as might be necessary. Further, the question of Ballou's negligence is by no means confined to the absent safety kit.[5] There was evidence (although disputed) that the tractor-trailer showed no lights of any sort at the time of the accident. A State trooper came upon Ballou in his vehicle

---

[3] "Shoulder" naturally comprises a breakdown lane, as was made reasonably clear at oral argument.

[4] Under 49 C.F.R. § 393.95(f) (1977), the driver was required to carry three emergency flares, or three electric emergency lanterns, or three red emergency reflectors, or three reflective triangles. If the driver chose to carry flares or electric lanterns he was required also to equip himself with two red flags. Section 392.22 provides for the positioning of the warning devices on the highway. (We omit various details.)

[5] We note, incidentally, that compliance with regulations does not necessarily or automatically in all circumstances insulate a driver from a finding that he was negligently unprepared for an emergency. See *Bradley* v. *Boston & Me. R.R.,* 2 Cush. 539, 543 (1848); *O'Connor* v. *Hickey,* 260 Mass. 110, 116 (1927).

about one hour before the accident and there was evidence (also disputed) that he gave Ballou flares which, had they been set successively, would have left one burning as Thurston approached the top of the incline. There was evidence (undisputed) that, in a five and one-half hour period, Ballou made only three desultory, and failing, efforts to flag down motorists as they passed his vehicle. Ballou, who had traversed this road on other occasions, did not energize himself to go to the intersection with Route 1 only 450 feet away where opportunities for getting help were likely to be better. Ballou came as near as might be to doing nothing at all, and was found in his cab at the moment of collision. It is clear enough that there was no basis for a directed verdict or for judgment n.o.v. Regarding the element of causation, compare *Cimino* v. *Milford Keg, Inc.,* 385 Mass. 323, 330-331 (1982).[6]

2. The jury were asked to answer special questions under Mass.R.Civ.P. 49(a), 365 Mass. 813 (1974). After appropriate questions about negligence and causation, question 4 asked, "Assuming total causal negligence equals 100%, what part of that total do you attribute to the negligence of Mr. Ballou, and what part to the negligence of Mr. Thurston?"; question 5 then asked the jury to put down a dollar amount that would fairly compensate the plaintiff for the injuries he sustained in the accident. After some deliberation, the jury sent these inquiries to the judge: "If we decide on 50-50 fault for each individual, can we award Mr. Thurston an amount of money as damages?" and "The amount we arrive at, will the percentage be applied to it?" After explaining to counsel that he normally answered such questions from juries, the judge instructed the jury further

---

[6] In acting on a motion for judgment n.o.v., as on a motion for a directed verdict, a judge should "consider only evidence favorable to the plaintiff," and "there is no error in [a denial] if there can be found anywhere in the entire evidence any set of circumstances that will support a reasonable inference in favor of the plaintiff." *Mazzaferro* v. *Dupuis,* 321 Mass. 718, 719 (1947). See *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972); *D'Annolfo* v. *Stoneham Housing Authy.,* 375 Mass. 650, 657 (1978).

Although unnecessary for our review, we may note that the jury could have found negligence on the plaintiff's part in his reaction to the passing car and in his movement into the breakdown lane.

on comparative negligence and answered the jury's questions. Although the defendants took no objection to the substance of the judge's statements, they had objected to the judge's undertaking to provide any answers to the jury. We doubt the defendants "stat[ed] distinctly . . . the grounds of [their] objection" as required by Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), so as to preserve it for appellate review.[7] In any case, we held in the quite similar case of *Kettinger* v. *Black & Decker Mfg. Co.*, 13 Mass. App. Ct. 993, 994-995 (1982), that, just as the use of special questions is discretionary with the judge, so is it discretionary to describe the consequences of jury answers to special questions on comparative negligence, whether by means of instructions or responses to questions put by the jury.

There was no abuse of discretion. Comparative negligence is not an easy subject. The jury questions were intelligent. It is not indicated that anything in the picture suggested the jury were preparing themselves through their questions for a bout of unreasoning indulgence in sympathy.

Opinion has differed about the judge's advising a jury about the results that may flow from their rule 49(a) answers on comparative negligence.[8] We would point to the danger of the jury's speculating in the dark about the possible consequences and would leave it to the judge (as we held in *Kettinger*) to sense — having in view the facts of the particular case, any appeals therein to prejudice over reason, and the style of any

---

[7] Counsel said, "I don't know if I agree with that" (judge's intention to answer the questions). The judge said, "Legally?" and counsel said, "Oh, not legally. If you instruct them," and asked the judge to note his objection. He did not articulate any reason in the context of the circumstances of the case. See, as to the compliance with rule 51(b), *Huff* v. *Holyoke*, 386 Mass. 582, 583 n.2 (1982); *Miller* v. *Boston & Me. Corp.*, 8 Mass. App. Ct. 770, 773 (1979); Smith & Zobel, Rules Practice § 51.6, at 229 (1977 & 1986 Supp.).

[8] Compare *Thedorf* v. *Lipsey*, 237 F.2d 190, 193 (7th Cir. 1956); *McGowan* v. *Story*, 70 Wis. 2d 189, 195-199 (1975); Comment, Informing the Jury of the Legal Effect of Special Verdict Answers in Comparative Negligence Actions, 1981 Duke L. J. 824, with *Porche* v. *Gulf Miss. Marine Corp.*, 390 F. Supp. 624, 632 (E.D. La. 1975); *Thomas* v. *Trustees of Salem Township*, 224 Kan. 539, 551 (1978). See generally 9 Wright & Miller, Federal Practice and Procedure § 2509 (1971 and 1986 Supp.).

inquiries from the jury — whether elucidation with necessary warnings would be likely to help or hurt.

*Judgment affirmed.*