[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On September 24, 1994, Luisa Centeno (Centeno) was a passenger in an automobile which was involved in an accident on Interstate 95. The defendant Ronald C. Spear (Spear), the operator of the vehicle in which Centeno was a passenger, swerved his automobile from the center travel lane into the right travel lane in order to avoid a piece of tire tread on the highway. Spear struck the left rear of a van which the plaintiffs allege was parked on the right shoulder of the highway, between the right travel lane and the guardrail. Semac Electric Co., Inc. (Semac) was the owner of the van, and Craig Clinton (Clinton), a Semac employee, had parked the van on the shoulder of the highway. After colliding with the van, Spear's vehicle spun to its left and came to rest in the right travel lane where it was struck in the right rear by a vehicle CT Page 11002 operated by William T. Teichgraeber (Teichgraeber) and leased to him by Enterprise Rent-A-Car, Inc. (Enterprise). As a result of the accident, Centeno sustained serious personal injuries and her mother, the plaintiff Maria Rivera (Rivera), incurred medical expenses.
Rivera has filed a three count revised complaint on behalf of herself and Centeno as Centeno's "parent, natural guardian and next friend." In count one, Rivera and Centeno allege that Semac and its employee, Clinton, were negligent and careless. Rivera and Centeno allege in count two that Teichgraeber was negligent and careless, and that Enterprise is liable to Centeno for any damage caused by Teichgraeber's operation of the rental car to the extent dictated by General Statutes § 14-154a. Finally, in count threee, Rivera and Centeno allege negligence and carelessness by Spear.
Clinton and Semac have filed a motion for summary judgment as to the first count of the revised complaint. They allege that the van which Clinton parked was where it was entitled to be and that, as a matter of law, they were not negligent.
In support of the motion, Clinton has submitted an affidavit which establishes the following facts. Clinton was employed by Semac as a member of its inspection and repair crew. Semac had been hired by the Department of Transportation of the State of Connecticut to conduct and inspection of manholes that Semac had installed. On the date of the accident, Clinton was conducting an inspection of manholes that Semac had installed approximately five feet to the right of the guardrails located at the edge of the right shoulder of Interstate 95 in West Haven, Connecticut. In order for Clinton to properly inspect the manholes, it was necessary for him to park the van on the right shoulder, also referred to as the breakdown lane, then exit the truck and walk to the area where the manholes were located.
"[T]he weather was clear, visibility was excellent and the roads were dry. The area where [Clinton] stopped the van was a straight stretch of highway with no obstructions to visibility." Clinton further states in his affidavit:
. . .
 7. I parked the Van approximately two feet to the right of the white line separating the right northbound lane form the breakdown lane. My Van was parked perfectly CT Page 11003 straight and not on an angle.
 8. My Van had a yellow flashing beacon on the roof and a set of red blinking hazard lights on the rear, both of which were operating properly at the time and which I had turned on prior to my exiting the vehicle.
 9. After I had completed my inspection of the manhole and while the Semac Van was so parked in the breakdown lane, and as I was returning to my vehicle, it was struck by the car in which the plaintiff was riding. Prior to it striking my Van I heard a screech of brakes and observed the plaintiff's automobile to be out of control as it veered from the center lane, across the right lane and into the rear of the Semac Van that was stopped in the breakdown lane.
 10. The plaintiff's car crashed into the left rear of the Van while the Van was so stopped in the breakdown lane. The force of the impact pushed the Van a few feet forward and up against the guard rail.
Clinton has not been impeached with respect to these facts.[1]
Although the plaintiffs has alleged a bevy of specifications of negligence against Clinton and Semac, at the hearing on the motion for summary judgment, the plaintiffs narrowed their argument to a claim that, even assuming the truth of Clinton's affidavit, a jury could still conclude that his actions violated Regs. Conn. State Agencies §§ 14-298-241, 14-275b-129.
 I
Section 14-298-241 of the Regulations of Connecticut State Agencies, entitled "Parking in highway right of way," provides: "No person shall allow his vehicle to remain standing or parked within the highway right-of-way except in areas provided for this purpose and in obedience to signs, signals or the directions of officers." A highway right-of-way is "the strip of land over which is built a public road." Webster's Ninth New Collegiate Dictionary (1991). The evidence is that Clinton parked his van on the shoulder. "`Shoulder' means that portion of a highway immediately adjacent and contiguous to the travel lanes or main traveled portion of the roadway." General Statutes § 14-1(74); see also General Statutes § 14-212(1). "The shoulders of a CT Page 11004 highway, while not designed for ordinary vehicular traffic, are intended for use when need arises"; Griffith v. Berlin,130 Conn. 84, 87, 32 A.2d 56 (1943); "such as allowing distressed automobiles to move out of the flow of traffic (see Webster's Third New International Dictionary [1963 ed], p. 2104." Bottalicov. State, 59 N.Y.2d 302, 305-306, 464 N.Y.S.2d 707, 708,451 N.E.2d 454 (1983); see also Thurston v. Ballou,23 Mass. App. 737, 505 N.E.2d 888, 890 n. 3 (1987). Since the shoulder is designed for standing or parked vehicles, and since there is no evidence of "signs, signals or . . . directions of officers," Clinton and Semac did not violate § 14-298-241 by parking on the shoulder.
 II
Section 14-275b-129 of the Regulations of Connecticut State Agencies entitled "Warning devices for disabled vehicles," provides: "At least three warning devices which conform to FMVSS-125 for use in warning traffic in event of prolonged stops on the highway shall be provided." This regulation is contained in that portion of the regulations promulgated by the commissioner of motor vehicles the purpose of which is to "specif[y] minimum standards for the construction and equipment of type I school buses. . . ." Regulations of Connecticut State Agencies § 14-275b-1 ("Scope"). There is no claim, nor does it appear, that Clinton was operating a type I school bus. See Regulations of Connecticut State Agencies § 14-275b-2(a) (defining a "type I" school bus). This regulation is inapplicable.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. Since neither administrative regulation on which the plaintiffs rely prohibited Clinton from parking his Semac vehicle on the shoulder of Interstate 95, Clinton was not negligent. The defendants' motion for summary judgment is granted.
BY THE COURT
Bruce L. LevinJudge of the Superior Court
CT Page 11005