2001 ND 96

**Richard SOLLIN and Linda Sollin, Plaintiffs and Appellants**

**v.**

**Dale WANGLER and Pius Wangler, Defendants and Appellees.**

No. 20000284.

Supreme Court of North Dakota.

May 22, 2001.

Douglas J. Nill (argued), Douglas J. Nill Law Office, Minneapolis, MN, for plaintiffs and appellants.

Lee J. Balerud (appeared), Minot, for plaintiffs and appellants.

Jerry W. Evenson, Zuger Kirmis & Smith, Bismarck, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Richard and Linda Sollin appealed from an order denying a motion for new trial in their personal injury action against Dale and Pius Wangler. We conclude the trial court's failure to inform the jury, sua sponte, about the effect of its answers to comparative fault questions on its award of damages is not fundamental error requiring a new trial, and the court did not abuse its discretion in denying the motion for new trial. We affirm.

I

[¶ 2] On February 13, 1995, Richard Sollin was employed by David Migler to operate Migler's hay grinder and grind straw for Dale and Pius Wangler. While the grinder was operating, Sollin began greasing the grinder in preparation for the next grinding job at another location. Dale Wangler, who had been using a tractor-loader to load the grinder with large straw bales, attempted to place another bale in the grinder tub. The 1,200–pound bale fell out of the tub and struck Sollin, severely injuring him. In January 1999, Sollin and his wife, Linda Sollin, sued the Wanglers, claiming Dale negligently operated the tractor-loader and Pius negligently instructed Dale about the grinding process. The Sollins sought damages for Richard's injuries and Linda's loss of consortium. The Wanglers alleged Richard's

own negligence in approaching the grinder tub to grease the machine while it was still operating proximately caused his injuries.

[¶ 3] During the jury trial, the Sollins did not request an instruction which would have advised the jury how its comparative fault findings might impact an award of damages. Under North Dakota's comparative fault law, the Sollins would not be able to recover damages if their fault was "as great as the combined fault of all other persons" who contributed to the injury. N.D.C.C. § 32–03.2–02. As requested by the Sollins, the trial court instructed the jury:

### ALTERNATIVE FINDINGS

If, adhering to these instructions, you find that damages of Plaintiff were proximately caused by the combined negligence of both Plaintiff and Defendant, you will then return a Special Verdict determining the amount of those damages, without dimunition for negligence and determining the percentages of fault of each party which proximately caused the damages claimed.

[¶ 4] The jury retired to deliberate at 4:40 p.m. on December 10, 1999. At 6:35 p.m., the court received a communication from the jury, stating "[w]e feel both parties are at fault," and requesting clarification on how to reflect that conclusion in the special verdict form. The court answered the question after consulting with counsel for the parties. At 8:29 p.m., the court received another communication from the jury: "Judge. Is the % of fault going to damage awards." The transcript discloses, "[b]y agreement, the Court and counsel handled it off the record." The Sollins' counsel later attested in an affidavit the trial court told the jury "to follow the instructions that were given after closing arguments."

[¶ 5] At 8:59 p.m., the jury returned its verdict, finding Dale Wangler 50% at fault, Pius Wangler 0% at fault, Richard Sollin 50% at fault, and David Migler, a nonparty, 0% at fault. The jury found Linda Sollin had incurred no damages, but found Richard Sollin had incurred $100,000 in past and future economic and noneconomic damages. Next to the line where the jury awarded Richard $8,000 for "Future Medical Expenses," the jury noted: "(to be used for Rehab)." Because Sollin's fault was as great as Wangler's fault, the trial court dismissed with prejudice the Sollins' claims against the Wanglers.

[¶ 6] The Sollins moved for a new trial, arguing the trial court erred as a matter of law in failing to comply with "procedural mandates" and to explain to the jury, upon the jury's request, how its answers to the comparative fault questions would affect the award of damages. The Sollins argued they were denied fundamental constitutional rights by the trial court's failure to do so. The trial court denied the motion, ruling the Sollins had not shown they were entitled to a new trial under any of the grounds set forth in N.D.R.Civ.P. 59(b). The court determined the instructions given were adequate and counsel could have explained to the jury during closing arguments, but did not, the relationship between comparative fault findings and damages. The Sollins appealed from the order denying their motion for new trial.

II

[¶ 7] The Sollins argue the trial court erred in denying their motion for new trial because a fundamental error of law and manifest injustice occurred in this case.

[¶ 8] We review a trial court's denial of a N.D.R.Civ.P. 59(b) motion for new trial under the abuse of discretion standard. *Ali by Ali v. Dakota Clinic, Ltd.*, 1998 ND 145, ¶ 5, 582 N.W.2d 653. A

trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Schneider v. Schaaf,* 1999 ND 235, ¶ 12, 603 N.W.2d 869. The party seeking relief has the burden to affirmatively establish an abuse of discretion. *Braunberger v. Interstate Engineering, Inc.,* 2000 ND 45, ¶ 7, 607 N.W.2d 904.

■ [¶ 9] Rule 59(b)(7), N.D.R.Civ. P., permits a new trial when errors in law occur at trial and are excepted to, "when required." The error must be "patent, obvious, or evident from the record," *Merrill Iron & Steel, Inc. v. Minn–Dak Seeds, Ltd.,* 334 N.W.2d 652, 655 (N.D.1983), and must "materially affect[ ] the substantial rights of a party." *Schaefer v. Souris River Telecommunications Co-op.,* 2000 ND 187, ¶ 14, 618 N.W.2d 175; N.D.R.Civ.P. 61. Rule 49(a), N.D.R.Civ. P., requires a court to "give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue." Under N.D.R.Civ.P. 51(c), however, to preserve for appellate review an alleged error regarding instructions to the jury, counsel "has the burden of objecting not only to parts included in the proposed instructions but also to omissions in the proposed instructions." *Leingang v. George,* 1999 ND 32, ¶ 16, 589 N.W.2d 585. Because the Sollins neither requested an instruction on how the comparative fault answers would affect the award of damages, nor objected to its omission, the issue is whether the trial court's failure to instruct the jury, upon the jury's questioning, was error materially affecting the Sollins' substantial rights.

A

■ [¶ 10] North Dakota's former comparative negligence statute, N.D.C.C. § 9–10–07, allowed a jury to be informed of how comparative fault answers would affect an award of damages by providing "[u]pon the request of any party, this section shall be read by the court to the jury and the attorneys representing the parties may comment to the jury regarding this section." This provision was added to the former statute when it was enacted in 1973 "so the jury knows what has happened." *Hearing on H.B. 1509 Before the Senate Judiciary Committee,* 43rd N.D. Legis. Sess. (February 27, 1973) (testimony of Al Wolf). When N.D.C.C. § 9–10–07 was effectively repealed in 1987, *see* 1987 N.D. Sess. Laws ch. 404, § 15; 1993 N.D. Sess. Laws ch. 324, § 1, and replaced with the new modified comparative fault law codified at N.D.C.C. § 32–03.2–02, the provision allowing, upon request, the court to inform the jury and the attorneys to comment to the jury about the law was omitted from the new legislation. The legislative history is silent on the reason for its omission from N.D.C.C. § 32–03.2–02.

[¶ 11] The current North Dakota Pattern Jury Instructions contain a special verdict form, N.D.J.I.—Civil C–90.56, which parenthetically states "[t]he Court may wish to include an instruction here concerning the effect of the allocation of fault in a particular case and whether, depending upon that allocation, the Jury should answer the damages questions." The pattern jury instructions are published by the State Bar Association of North Dakota in conjunction with the North Dakota Pattern Jury Instruction Commission and caution users the instructions are "neither a restatement nor an encyclopedia of the prevailing law." Counsel for the Sollins requested N.D.J.I.—Civil C–90.56, and submitted a special verdict form based on

it, but did not include an instruction based upon the bracketed language regarding the court's discretion to instruct the jury on the effect of the allocation of fault on damages.

[¶ 12] This Court has not addressed whether a jury should be told how its liability apportionment will affect an award of damages since the statutory authority to do so was repealed in 1987. Before N.D.C.C. § 9–10–07 was enacted in 1973, this Court held it was reversible error for counsel to comment on, or the trial court to advise the jury about, the ultimate result and legal effect of special verdict findings. *See Ferderer v. Northern Pacific Railway Co.*, 77 N.D. 169, 185, 42 N.W.2d 216, 225 (1950); *Huether v. McCaull-Dinsmore Co.*, 52 N.D. 721, 735, 204 N.W. 614, 619 (1925); *Reichert v. Northern Pacific Railway Co.*, 39 N.D. 114, 147, 167 N.W. 127, 138 (1917); *Morrison v. Lee*, 13 N.D. 591, 599, 102 N.W. 223, 225 (1904). The rationale for this position was explained in *Morrison*, 13 N.D. at 599, 102 N.W. at 225:

> The object of the law is to secure fair and impartial answers to the questions submitted, "free from bias or prejudice in favor of either party or in favor of a particular result." The jury should not, therefore, be informed, either by the instructions or by the form of the questions, how any particular answer will affect the case, or what judgment will follow in consequence of it, "for to impart such information would almost necessarily defeat the object intended to be secured by a special verdict." And for this reason it is error to inform the jury under what circumstances the plaintiff can or cannot recover.

This reasoning appears to have been the prevailing rule at the time. *See* Annot., *Reversible effect of informing jury of the effect that their answers to special inter-rogatories or special issues may have upon ultimate liability or judgment*, 90 A.L.R.2d 1040 (1963).

[¶ 13] The overwhelming modern trend is away from the "blindfold rule" in comparative negligence jurisdictions and toward permitting the jury to be informed of the legal consequences of its special verdict answers through an "ultimate outcome" instruction because the jury's lack of knowledge does not eliminate sympathy and bias, but merely insures that the jury makes its decision in greater ignorance. *Wheeler v. Bagley*, 254 Neb. 232, 575 N.W.2d 616, 619 (1998). The Idaho Supreme Court's often-cited opinion in *Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683, 690–91 (1978), reasons:

> It would be incredibly naive to believe that jurors, after having listened attentively to testimony of the parties and a parade of witnesses and after having heard the arguments of counsel, will answer questions on a special verdict form without giving any thought to the effect those answers will have on the parties and to whether their answers will effectuate a result in accord with their own lay sense of justice. With respect to most questions, the jury would have to be extremely dullwitted not to be able to guess which answers favor which parties. In those instances where the legal effect of their answers is not so obvious, the jurors will nonetheless speculate, often incorrectly, and thus subvert the whole judicial process.

> The rule against informing the jury of the effect of a 50–50 allocation of negligence of course places the defense counsel in a position to exploit the sense of equity implicit in such a finding without the plaintiff's counsel being able to argue the critical legal import of such a determination. Thus, the uninformed jury could easily deceive itself

into believing that it has decided that the defendant should pay for half of the plaintiff's damages when in fact it has determined that the plaintiff will recover nothing at all.

Contrast that situation to one in which the jury is composed of members at least some of whom have learned from prior jury experience or other sources how the comparative negligence law in Idaho actually operates. A reminder in the deliberations by one of the jurors that a finding of 50% negligence will result in no recovery by the plaintiff is likely to cause the jurors to examine the facts more closely before quickly coming to the appealing 50–50 allocation of negligence. Thus, it is not unlikely that in a number of cases whether the plaintiff recovers may depend as much upon how "courtwise" the members of the jury are as upon how the jurors view the facts. In short, not informing the jury of the effect of a 50% negligence finding in many cases is likely to cause an unjust result and produce a judgment which does not reflect the wisdom of the jury or their view of the facts, but only their ignorance of Idaho law.

[¶ 14] Based on this reasoning, many jurisdictions now allow the jury to be informed of the legal consequences its special verdict answers will have on damages. Some jurisdictions have adopted the rule by statute or rule of court. *See, e.g.,* Iowa Code Ann. § 668.3(5) (West 1998); Neb. Rev.Stat. § 25–21,185.09 (1995); Or.Rev. Stat. § 18.480(2)(1999); Wyo. Stat. Ann. § 1–1–109(c)(i)(B) (Michie 1999); Minn. R. Civ. P. 49.01(b) (West 2001); Tex.R. Civ. P. 277 (West 2001). Other jurisdictions have adopted the rule by judicial decision. *See, e.g., Kaeo v. Davis,* 68 Haw. 447, 719 P.2d 387, 396 (1986); *Thomas v. Board of Township Trustees,* 224 Kan. 539, 582 P.2d 271, 281 (1978); *Thurston v. Ballou,* 23 Mass.App.Ct. 737, 505 N.E.2d 888, 891

(1987); *Martel v. Montana Power Co.,* 231 Mont. 96, 752 P.2d 140, 146 (1988); *Roman v. Mitchell,* 82 N.J. 336, 413 A.2d 322, 327 (1980); *Schabe v. Hampton Bays Union Free Sch. Dist.,* 103 A.D.2d 418, 480 N.Y.S.2d 328, 336 (1984); *Peair v. Home Ass'n of Enola Legion No. 751,* 287 Pa.Super. 400, 430 A.2d 665, 671–72 (1981); *Dixon v. Stewart,* 658 P.2d 591, 597 (Utah 1982); *Adkins v. Whitten,* 171 W.Va. 106, 297 S.E.2d 881, 884 (1982).

[¶ 15] If the Legislature's repeal of N.D.C.C. § 9–10–07 revived the precedential value of this Court's decisions in *Ferderer, Huether, Reichert* and *Morrison, see Reeves & Co. v. Russell,* 28 N.D. 265, 280–81, 148 N.W. 654, 660 (1914); *North Shore Hospital, Inc. v. Barber,* 143 So.2d 849, 853 (Fla.1962); 2B N. Singer, *Statutes and Statutory Construction* § 50:01 (6th ed.2000), an issue we need not decide, we overrule those decisions to the extent they indicate it is reversible error to advise or mention to a jury the legal effect of its special verdict findings. If, on the other hand, the repeal of N.D.C.C. § 9–10–07 did not revive this Court's prior caselaw on the subject, *see* N.D.C.C. § 1–02–19; *In re Estate of Jensen,* 162 N.W.2d 861, 862 Syll. ¶ 4 (N.D.1968), the issue was unsettled in this jurisdiction at the time of the Sollins' trial. The logic of the modern trend is compelling and we will now follow that trend.

## B

[¶ 16] However, the Sollins have not cited, nor have we found, any cases holding a trial court's failure to give an unrequested instruction to the jury on the effect of its answers to comparative fault questions on the plaintiff's damages is fundamental error requiring a new trial. Perhaps the closest cases they cite are *Wheeler,* 254 Neb. 232, 575 N.W.2d 616, and *Halla Nursery v. Baumann–Furrie & Co.,* 438

N.W.2d 400 (Minn.App.1989), but both cases are distinguishable. The trial courts in those cases had granted motions for new trial either for inadequately instructing or for failing to instruct the jury on the effect of the jury's answers to comparative fault questions in violation of a statutory provision or rule of court. The Nebraska Supreme Court in *Wheeler*, 575 N.W.2d at 621, and the Minnesota Court of Appeals in *Halla Nursery*, 438 N.W.2d at 404, affirmed, concluding the respective trial courts had not abused their discretion in granting the motions for new trial. Not only are these cases distinguishable because of the Nebraska statutory provision and Minnesota rule of court involved, but because the appellate courts affirmed trial court grants of motions for new trial. Moreover, the decision of the Minnesota Court of Appeals in *Halla Nursery* was ultimately reversed by the Minnesota Supreme Court because "the trial court erred in concluding that its failure to instruct the jury on the effects of comparative fault was a fundamental error of law requiring a new trial." *Halla Nursery v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 912 (Minn. 1990).

[¶ 17] Several of the cases the Sollins rely on for the proposition a court should inform the jury of the ultimate outcome of its comparative fault findings have arisen in the procedural posture of arguments on appeal that courts erroneously gave the instruction, and the appellate courts ruling the trial courts did not err in doing so. *See, e.g., Luna v. Shockey Sheet Metal & Welding Co.*, 113 Idaho 193, 743 P.2d 61, 65 (1987); *Thomas*, 582 P.2d at 281; *De-Celles v. State ex rel. Depart. of Highways*, 243 Mont. 422, 795 P.2d 419, 420 (1990); *Schabe*, 480 N.Y.S.2d at 336; *Smith v. Gizzi*, 564 P.2d 1009, 1013 (Okla.1977); *Peair*, 430 A.2d at 672; *Adkins*, 297 S.E.2d at 882. Rather than adopt a per se rule requiring an ultimate-outcome instruction

in every comparative negligence case, courts usually hold the instruction must be given if requested, and only if the court believes the instruction will not confuse or mislead the jury. *See, e.g., Kaeo*, 719 P.2d at 396; *Thurston*, 505 N.E.2d at 891; *Martel*, 752 P.2d at 146; *Roman*, 413 A.2d at 327; *Dixon*, 658 P.2d at 596; *Adkins*, 297 S.E.2d at 884. *See also Luna*, 743 P.2d at 65 (holding trial court is not required, but has discretion whether to inform jury of legal effect of findings contingent on whether instruction might confuse or mislead the jury); *Seppi*, 579 P.2d at 692 (same).

■ [¶ 18] Because this line of authority is consistent with N.D.R.Civ.P. 49(a) on special verdicts, we conclude a trial court should give an ultimate-outcome instruction in a comparative fault case if it is properly requested and the court determines the instruction will not confuse or mislead the jury.

### C

■ [¶ 19] The Sollins argue the trial court had a duty to give an ultimate-outcome instruction in this case because of the jury's "specific request" during deliberations and the "compelling" evidence of its misunderstanding the effect its comparative fault findings would have on the damage award.

[¶ 20] In the two cases cited by the Sollins involving inquiries from the jury, the inquiries were explicit or strongly implied confusion and speculation, and the appellate courts held the trial courts did not err in instructing the jury as to the ultimate outcome. *See Thurston*, 505 N.E.2d at 891; *Schabe*, 480 N.Y.S.2d at 337. Here, the jury asked the judge "[i]s the % of fault going to damage awards." Presumably, the trial court and counsel interpreted the question as requesting an

explanation of the "Alternative Findings" instruction, which told the jury to not diminish its damages findings based upon its fault findings. The trial court told the jury to follow the instructions that were given. The "Alternative Findings" instruction requested by the Sollins, which required the jury to determine the amount of damages regardless of the amount of the parties' negligence, conflicts in theory with the substance of an ultimate-outcome instruction. The trial court cannot be faulted for failing to interpret the question as a specific request for an ultimate-outcome instruction when counsel for the Sollins did not interpret the question as requesting that information.

■ [¶ 21] Although the jury's handwritten notation in the special verdict form directing Richard Sollin to use $8,000 "for Rehab," a request not within the jury's province to direct, suggests the jury might have believed Sollin would receive a recovery, the jury was required by the instructions to determine damages without diminution for the parties' negligence. It is also plausible the jury was merely following the instructions without regard to whether Sollin actually recovered. Speculation is insufficient to establish jury confusion requiring a new trial. *See Regan Farmers Union Co-op. v. Swenson*, 253 N.W.2d 327, 332 (N.D.1977).

[¶ 22] Under these circumstances, the trial court was not required to sua sponte instruct the jury on the effect of its comparative fault questions on the award of damages.

### D

[¶ 23] In *Rau v. Kirschenman*, 208 N.W.2d 1, 9 (N.D.1973), this Court held that "failure to instruct the jury with respect to a rule that is not the law in North Dakota is not a fundamental or highly prejudicial error such that our failure to review it in the absence of objection at trial would result in a gross miscarriage of justice." *See also Kirchoffner v. Quam*, 264 N.W.2d 203, 207 (N.D.1978).

[¶ 24] In this case, the Sollins did not request an ultimate-outcome instruction before trial, even though a pattern jury instruction requested by them suggested it might be appropriate. The Sollins did not object to the omission of the instruction before the jury deliberated. The Sollins did not request the instruction when the jury submitted its question during deliberations. At best, the issue whether an ultimate-outcome instruction can be given in North Dakota was unsettled when the trial was held. At worst, the existing caselaw in North Dakota indicated the giving of such an instruction was reversible error. Under these circumstances, we conclude the trial court's failure to inform the jury, sua sponte, about the effect of its answers to comparative fault questions on its award of damages is not error of constitutional magnitude under N.D. Const. art. I, § 9, *see Andrews v. O'Hearn*, 387 N.W.2d 716, 723 (N.D.1986), or fundamental error affecting substantial rights and requiring a new trial.

[¶ 25] We conclude the trial court did not abuse its discretion in denying the Sollins' motion for new trial.

### III

[¶ 26] The order denying the motion for new trial is affirmed.

[¶ 27] KAPSNER, MARING, NEUMANN, and SANDSTROM, JJ., concur.