2006 ND 190

John STRAND, Cass County resident and tax payer and other Concerned Citizens and tax payers, similarly situated, Plaintiffs and Appellants

v.

CASS COUNTY, North Dakota, a political subdivision, Defendant and Appellee

and

the Cass County Commission, Defendant.

No. 20050380.

Supreme Court of North Dakota.

Aug. 28, 2006.

Robert W. Harms (argued), Bismarck, ND, and John T. Goff (appeared), Montgomery, Goff and Bullis, Fargo, ND, for plaintiffs and appellants.

Robert G. Manly (argued), and W. Todd Haggart (appeared), Vogel Law Firm, Fargo, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] John Strand and other Cass County residents and taxpayers appeal from a judgment dismissing their civil rights and abuse of process actions against Cass County and from an order denying their request for an award of attorney fees. We conclude the district court did not commit reversible error in instructing the jury on the civil rights claim. We further conclude the court failed to rule on part of Strand's request for attorney fees. We affirm the judgment, but we reverse the order denying Strand's request for attorney fees and remand for reconsideration.

I

[¶ 2] In the late 1990s, Cass County voters approved a one-half cent sales tax for a new jail. The County eventually decided to demolish the old jail and sheriff's residence in Fargo. Strand and a group of Cass County citizens known as "Save the Jail" (collectively "Strand") sought to prevent demolition because both buildings were listed on the National Registry of Historic Places. In an effort to prevent demolition, Strand appeared at County Commission meetings, filed petitions for a two-year moratorium, wrote guest editorials in the newspaper, and initiated requests for opinions from the North Dakota Attorney General.

[¶ 3] On February 18, 2003, the County awarded bids to demolish the buildings. However, on February 25, 2003, the Attorney General issued a letter opinion declaring that "Cass County may not destroy the

residence without the State Historical Board's approval." N.D. Op. Atty. Gen. 2003–L–11, at 1. The State Historical Board met on March 11, 2003, and granted the County permission to demolish the jail, but continued the hearing on the sheriff's residence until April 11, 2003. At the April 11 meeting, the Board gave its approval to demolish the sheriff's residence, and demolition work began in the afternoon. Also on April 11, 2003, the Attorney General issued another letter opinion declaring that under the terms of N.D.C.C. ch. 11–11, "if the project constitutes an extraordinary expenditure, Cass County cannot commence the project prior to submitting the proposed expenditure to a vote. Whether the demolition is a separate project from the proposed construction is a question of fact on which this office cannot opine." N.D. Op. Atty. Gen. 2003–L–25, at 4. The County decided that demolition was a separate project not requiring voter approval, and work continued.

[¶ 4] On April 14, 2003, Strand sued the County and obtained a temporary restraining order prohibiting any further demolition. Strand's complaint alleged that the County was obligated under N.D.C.C. ch. 11–11 to hold a vote before proceeding with demolition. The temporary restraining order was vacated by stipulation of the parties on April 22, 2003, because the buildings were so severely damaged. On May 6, 2003, the demolition contractor submitted a bill and proposed contract change order for $39,066 to the County. On May 7, 2003, the County filed its answer and counterclaim asserting that Strand's actions resulted in additional costs to the county "in excess of $39,000." The County also alleged that Strand's "allegations are untrue, made without reasonable cause and not in good faith and are frivolous pursuant to N.D.C.C. § 28–26–31," and requested "costs, disbursements and reasonable attorney fees as may be allowed by law." The County Commission subsequently approved filing the counterclaim. Strand was allowed to amend his complaint to allege that he was entitled to attorney fees from the County because its pleadings were frivolous and not filed in good faith, that the County had violated his civil rights under the First Amendment, the North Dakota Constitution, and 42 U.S.C. § 1983, and that the County had committed abuse of process.

[¶ 5] Strand's civil rights and abuse of process claims, as well as the County's counterclaim for additional costs, were submitted to a jury. On the morning of trial, the County withdrew its request for attorney fees against Strand. The jury found that the County did not violate Strand's First Amendment rights and did not commit abuse of process by asserting a counterclaim against Strand. The jury also found that Strand's procurement of the temporary restraining order did not damage the County. The district court later ruled that the County did not violate N.D.C.C. ch. 11–11 by failing to submit the demolition project to a vote of the electors. Strand then moved for an award of attorney fees alleging the County's pleadings, including its request for attorney fees, were not filed in good faith and were frivolous. The court denied Strand's request for an award of attorney fees. This appeal followed.

II

[¶ 6] Strand argues the district court committed reversible error in instructing the jury on his civil rights claim under 42 U.S.C. § 1983.

[¶ 7] We review jury instructions to determine whether, as a whole, they fairly and adequately advised the jury. *Case Credit Corp. v. Oppegard's,*

*Inc.*, 2005 ND 141, ¶ 9, 701 N.W.2d 891. A proper jury instruction adequately informs the jury of the applicable law. *Amyotte v. Rolette County Hous. Auth.*, 2003 ND 48, ¶ 5, 658 N.W.2d 324. The district court is not required to instruct the jury in the exact language sought by a party if the instructions are not misleading or confusing, and if they fairly advise the jury of the law on the essential issues of the case. *Forster v. West Dakota Veterinary Clinic, Inc.*, 2004 ND 207, ¶ 29, 689 N.W.2d 366.

[¶ 8] The district court instructed the jury as follows:

## CIVIL RIGHTS VIOLATION

To be found liable for a civil rights violation Cass County must have deprived John Strand of a right, privilege, or immunity secured by the First Amendment.

Depriving a person of their civil rights may include retaliation by the County for exercising those rights. Such retaliation may be shown if it tends to chill or deter the civil rights of a person of ordinary firmness. Also, through the conduct of the County, there is or will be a chilling effect on the First Amendment Rights of a person or persons of ordinary firmness in the present or in the future.

## CIVIL RIGHTS VIOLATION– ELEMENTS

For you to find the defendant liable for a violation of the plaintiff's civil rights, the plaintiff must prove:

1. That the defendant deliberately deprived the plaintiff of a right, privilege or immunity provided by the United States Constitution;

2. That the deprivation of such protected right, privilege or immunity resulted from a policy or custom of the defendant; and

3. That the plaintiff sustained an actual injury as defined in these instructions.

Strand contends this instruction is erroneous because it required the jury to find that a violation of his civil rights had to be the result of a "policy or custom" of the County, and the commissioners' approval of the filing of the counterclaim indisputably constituted an official "policy."

[¶ 9] Strand's civil rights claim was based on 42 U.S.C. § 1983, which provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[¶ 10] In *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." The Court's conclusion was based on the specific language of the statute itself, as well as the statute's legislative history. *Id.* at 665–83, 692, 98 S.Ct. 2018. As the Supreme Court later explained, "in *Monell* and subsequent cases, we have required a plaintiff seeking

to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court also made it clear that "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future— because even a single decision by such a body unquestionably constitutes an act of official government policy." The Court in *Pembaur,* at 481, 106 S.Ct. 1292 (footnote omitted), explained:

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

Consequently, it is a well-settled principle of § 1983 jurisprudence that a local government body may only be held liable for constitutional violations which result from a policy or custom of the government body. *See, e.g., Scheeler v. City of St. Cloud,* 402 F.3d 826, 832 (8th Cir.2005); *Turney v. Waterbury,* 375 F.3d 756, 761– 62 (8th Cir.2004); *Yellow Horse v. Pen-*

*nington County,* 225 F.3d 923, 928 (8th Cir.2000).

[¶ 11] We conclude the district court did not err in rejecting Strand's request that reference to "policy or custom" be removed from the jury instruction defining the elements of a civil rights violation. Although it is error for a court to include inapplicable portions of a statute in jury instructions, *Case Credit Corp.,* 2005 ND 141, ¶ 12, 701 N.W.2d 891, the terms "policy or custom" are applicable portions of the statute, the instruction is a correct statement of the law, and it comports with standard jury instructions on § 1983 liability. *See* 3B K. O'Malley, J. Grenig, W. Lee, *Federal Jury Practice and Instructions; Civil* § 165.25, at 626 (5th ed. 2001). Indeed, a failure to refer to "policy" or "custom" in the instruction might have constituted error because it could have allowed the jury to find against the County on a mere respondeat superior theory. *See Chonich v. Wayne County Cmty. Coll.,* 874 F.2d 359, 366–67 (6th Cir.1989); *Harris County v. Lu,* 2002 WL 32341887, *2 (Tex.Ct.App., May 16, 2002).

[¶ 12] Strand argues the district court nevertheless should have defined the terms "policy or custom." Because Strand did not request such an instruction in the district court, he has failed to preserve the issue and we consider only whether the failure to define the terms constituted "plain error . . . affecting substantial rights" under N.D.R.Civ.P. 51(d)(2). *See Sollin v. Wangler,* 2001 ND 96, ¶¶ 23–24, 627 N.W.2d 159; *Rau v. Kirschenman,* 208 N.W.2d 1, 9 (N.D.1973).

[¶ 13] Strand principally relies on *Westborough Mall, Inc. v. City of Cape Girardeau,* 794 F.2d 330, 338–39 (8th Cir. 1986), in which the Eighth Circuit Court of Appeals ruled that in a § 1983 action the term "official policy" should be defined in

the instructions to explain that "municipal liability may be imposed for a single decision by a municipal policy maker if the single act (1) is a decision of the legislative body, or (2) is executed in compliance with formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances, consistently and over time, or (3) is directed by those who establish governmental policy." However, the *Westborough* court did not rule that the failure to define "official policy" in that case was reversible error. The court noted the appellants did not offer a definition of official policy to the trial court. *Id.* at 338. Because the *Westborough* court had found reversible error with respect to other instructions, it merely stated "[o]n remand, the district court should incorporate a definition of 'official policy' in its jury instructions." *Id.* at 339. Strand has not cited, nor have we found, any cases holding that a court's failure to sua sponte define "policy" or "custom" is reversible error. *See Swans v. City of Lansing*, 65 F.Supp.2d 625, 640 (W.D.Mich.1998) (where standard instruction on municipal liability was given, failure to define terms "policy" or "custom" was "not error, let alone plain error").

[¶ 14]   Strand claims the court's failure to define the terms is reversible because it was compounded by the County's closing argument during which its attorney argued: "There's no evidence, not one shred of evidence in this case, that the county's ever done it before, and as a consequence there cannot possibly be a policy or custom of a defendant to countersue a citizen." Although the County's argument may have been a misstatement of the law under the circumstances, Strand did not object to this argument when it was made, and did not respond to it in rebuttal closing argument. Moreover, the court's instruction on "Civil Rights Violation" immediately preceding the instruction on the elements informed the jury that a deprivation of civil rights could include "retaliation by the County for exercising those rights," thus indicating that the County's approval of the counterclaim could qualify as a civil rights violation. We conclude the instructions, as a whole, fairly advised the jury of the law on the essential issues of the case, and the court's failure to define "policy" or "custom" was not plain error affecting Strand's substantial rights under N.D.R.Civ.P. 51(d)(2).

### III

[¶ 15]   Strand argues the district court erred by failing to address his claim for attorney fees based on the ground that the County's demand for attorney fees was frivolous or made in bad faith.

[¶ 16]   In his post-trial motion, Strand sought an award of attorney fees under N.D.R.Civ.P. 11(b) and N.D.C.C. §§ 28–26–01 and 28–26–31. Strand's motion had two bases: (1) the County's counterclaim against him for $39,000 was frivolous and filed in bad faith; and (2) the County's request for attorney fees against him, which was withdrawn on the first day of trial, was frivolous and filed in bad faith. In its order denying Strand's motion, the district court only ruled on the first basis, holding Strand was not entitled to an award of attorney fees based on the County's assertion of the counterclaim. Strand does not challenge the court's refusal to award attorney fees for defending against the counterclaim, but asserts the court erred in failing to address his claim for attorney fees based on the County's request for attorney fees which was subsequently withdrawn.

[¶ 17]   An award of attorney fees under N.D.R.Civ.P. 11 and N.D.C.C. §§ 28–26–01 and 28–26–31 lies within the

sound discretion of the district court. *See Dietz v. Kautzman*, 2004 ND 119, ¶ 15, 681 N.W.2d 437; *Peterson v. Zerr*, 477 N.W.2d 230, 235 (N.D.1991). A district court abuses its discretion when it fails to address nonfrivolous issues presented to the court. *Hilgers v. Hilgers*, 2004 ND 95, ¶ 25, 679 N.W.2d 447. We reverse the court's order and remand for consideration of Strand's request for attorney fees based on the County's request for attorney fees from Strand.

### IV

[¶ 18] We affirm the judgment, reverse the order denying Strand's request for attorney fees, and remand for reconsideration.

[¶ 19] GERALD W. VANDE WALLE, C.J., and DOUGLAS L. MATTSON, District Judge, concur.

I cuncur in the result. DALE V. SANDSTROM, J.

[¶ 20] The Honorable Douglas L. Mattson, District Judge, sitting in place of Kapsner, J., disqualified.

MARING, Justice, concurring specially.

[¶ 21] I respectfully concur specially. I write only to make known my concerns regarding misstatements of law during closing arguments.

[¶ 22] In general, counsel must make a timely objection to a misstatement of the law and must ask the trial judge to give a curative instruction to the jury. *Blessum v. Shelver*, 1997 ND 152, ¶ 30, 567 N.W.2d 844. Failure to object waives the misstatement of the law. *Id.* There is one exception to this rule:

> The only exception to the general rule requiring objection to improper closing argument is when the misconduct of counsel is so severe that it affects that

party's substantial rights or constitutes a denial of a fair trial, thereby placing an independent duty upon the court to confine the attorney to the permissible bounds of argument, where necessary, and admonish the jury.

*Id.* (citing *Andrews v. O'Hearn*, 387 N.W.2d 716, 731 (N.D.1986)). A party's substantial rights are affected when an attorney's misstatement of the law during closing argument affects the outcome of the case. *Howes v. Kelly Services*, 2002 ND 208, ¶ 5, 654 N.W.2d 422.

[¶ 23] Here, the attorney for Cass County misstated the law when he stated during his closing argument, "[t]here's no evidence, not one shred of evidence in this case, that the county's ever done it before, and as a consequence there cannot possibly be a policy or custom of a defendant to countersue a citizen."

[¶ 24] However, Strand's ability to challenge Cass County's attorney's misstatement of law during closing argument was hindered by his own inaction. First, Strand failed to request a jury instruction on the meaning of "policy." Then, he never objected to Cass County's attorney's closing argument. Further, Strand never clearly argued how he was prejudiced by the misstatement of law and never moved for a new trial. We do not know how the trial judge would have viewed the impact of the misstatement of law because Strand did not make a motion for a new trial. A motion for a new trial provides the trial judge an opportunity to explain why a misstatement of the law made during closing argument was or was not prejudicial. In assessing prejudice, we consider the analysis of the trial judge because the judge was in a better position to weigh the impact of the misconduct. *Blessum*, 1997 ND 152, ¶ 33, 567 N.W.2d 844.

[¶ 25] A trial judge, however, must be concerned that a party receive a fair trial

and be ready to take appropriate action when a misstatement of the law occurs during closing argument. "[A] trial judge has a duty to prevent improper closing argument from prejudicing the jury." *Murphy v. Int'l Robotic Sys.*, 766 So.2d 1010, 1023 (Fla.2000). The trial judge in this case could have cured Cass County's attorney's misstatement of law. Trial judges must remember the important role they play in ensuring the fair administration of justice. Even if the trial judge breaches his duty, this does not necessarily mean the party's substantial rights are affected.

[¶ 26] Despite the exception to the waiver rule, under the facts present in this case, I agree with the majority that Cass County's attorney's misconduct during closing argument was not so severe that it affected Strand's substantial rights.

[¶ 27] Although Cass County's attorney's misstatement of the law did not affect Strand's substantial rights, such misconduct can have a significant impact. "An attorney must refrain from potentially prejudicial comments during closing argument." *Blessum*, 1997 ND 152, ¶ 32, 567 N.W.2d 844. Such comments could be grounds for reversal. The attorney for Cass County made an improper comment when he clearly misstated the law to the jury during his closing argument. I strongly believe improper comments should not be condoned; the legal system depends on public confidence in the courts and the system of justice is negatively impacted by the allowance of improper comments. Therefore, an exception to the waiver rule is essential to maintaining public trust in our jury trial system.

[¶ 28] I, therefore, concur specially and voice my concern that Cass County's attorney misstated the law during closing argu-ment without admonition by the trial court at any stage.

[¶ 29]   Mary Muehlen Maring