2004 ND 51

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Scott WILSON, Defendant and Appellant.**

**No. 20030112.**

Supreme Court of North Dakota.

March 1, 2004.

Wayne D. Goter, Bismarck, N.D., for defendant and appellant.

Brian D. Grosinger, Assistant State's Attorney, Mandan, N.D., for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1] Scott Wilson appeals his judgment of conviction for theft by deception, in violation of N.D.C.C. § 12.1–23–02(2). Wilson argues there was insufficient evidence to sustain the guilty verdict. Wilson also argues the trial court erred in failing to instruct the jury on the definitions of "deception," "deprive," and "intent." We affirm.

I

[¶ 2] Scott Wilson sold meat products door-to-door for Farmer's Pride, a company with offices in Fargo, North Dakota, and Roseville, Minnesota. C.M., a

Mandan, North Dakota, resident, was diagnosed with Alzheimer's disease type dementia in November 2000. C.M. purchased meat products from Wilson and issued four checks to him, in the amounts of $650.00, $1,014.42, $1,600.00, and $3,000.00, between January 11, 2001, and January 17, 2001. C.M.'s son, R.M., soon received nonsufficient funds notices regarding his mother's bank account and learned of the meat purchases. C.M. later informed R.M. that over 1000 pieces of meat had been delivered to her home and she had to store some of them in her garage and on her back porch. R.M. contacted Wilson, asking to cancel the sale and have Wilson retrieve the meat. Wilson refused, stating the three-day cancellation period had expired.

[¶ 3] Wilson was initially charged with theft of property. The charge was amended to theft by deception after the preliminary hearing. A jury trial commenced on July 30, 2002. At trial, a police officer testified Wilson had informed him that the $3,000 check was a personal loan and, according to Wilson, C.M. wanted to use some of the meat products as gifts. R.M. testified that each check bore his mother's signature, but only one check, for $650, was entirely in his mother's handwriting. C.M.'s doctor and R.M. both explained her memory problems. Wilson admitted to spending an hour and a half with C.M., which R.M. believed was an adequate amount of time to detect her memory problems. C.M. testified that she did not know or recognize Wilson, but that she did sign the checks. C.M. testified that she did not know why she would have bought so much meat. She also testified that she did not lend money to Wilson.

[¶ 4] Wilson twice requested the trial court provide a jury instruction defining "deception." The trial court denied Wilson's requests, stating the term was a matter of common use and an instruction could unnecessarily confuse the jury. The jury found Wilson guilty of theft by deception. Wilson was sentenced to five year's imprisonment, with two years suspended. During that two-year period of suspension, Wilson will be placed under supervised probation. Wilson appeals.

## II

[¶ 5] Wilson argues the State presented insufficient evidence to sustain his conviction for theft by deception. Wilson claims the evidence shows a series of contracts between C.M. and himself that are not fraudulent in nature or in their terms. According to Wilson, C.M. received the property she contracted for and there is no evidence showing the personal loan would not have been repaid. Therefore, there is no evidence from which a jury could reasonably infer Wilson practiced a deception, intending to deprive C.M. of her money without her authorization. We disagree.

[¶ 6] Under N.D.C.C. § 12.1–23–02(2), a person is guilty of theft if he "[k]nowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat." When reviewing challenges to the sufficiency of the evidence, we view the evidence most favorable to the verdict and all reasonable inferences from such evidence. *State v. Knowels*, 2003 ND 180, ¶ 6, 671 N.W.2d 816. The defendant "must show the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt." *State v. Strutz*, 2000 ND 22, ¶ 7, 606 N.W.2d 886. We do not weigh conflicting evidence or judge the credibility of witnesses. *State v. Johnson*, 425 N.W.2d 903, 906 (N.D.1988). We "merely review the record to determine if there is competent evidence that allowed

the jury to draw an inference reasonably tending to prove guilty and fairly warranting a conviction." *State v. Jacobson,* 419 N.W.2d 899, 901 (N.D.1988). This Court reverses a conviction only if no rational fact-finder could have found the defendant guilty beyond a reasonable doubt, after applying the standard above. *State v. Burke,* 2000 ND 25, ¶ 12, 606 N.W.2d 108. Wilson bears the burden of convincing this Court there is no reasonable inference of guilt, based on the evidence. *See State v. Ebach,* 1999 ND 5, ¶ 24, 589 N.W.2d 566.

[¶ 7] Sufficient evidence exists to support the jury's finding that Wilson knowingly obtained the property of C.M. by deception with the intent to deprive C.M. of such property, in violation of N.D.C.C. § 12.1–23–02(2). The facts, viewed in the light most favorable to the verdict, support Wilson's conviction. Wilson visited C.M. four times over a week-long period, obtaining more money from C.M. with each visit. Wilson admitted to spending an hour and a half with C.M., which R.M. testified would have been adequate time to become aware of C.M.'s memory problems. The jury heard testimony from both R.M. and Dr. Dale Klein describing C.M.'s Alzheimer's and the effect it has on her mental abilities. The jury also had an opportunity to observe C.M. personally while she testified. C.M. testified she did not know or recognize Wilson, nor did she lend him money. C.M. also testified she did not know why she would buy so much meat.

[¶ 8] Additionally, the evidence related to the checks supports Wilson's conviction. While each check bore C.M.'s signature, only one check, for $650, was written entirely in C.M.'s handwriting. Wilson claims the fourth check, in the amount of $3,000, was a loan, but R.M. testified Wilson had informed him it was for an additional twenty cases of meat. Wilson then told a different story to law enforcement

stating the check was a loan from C.M. These facts, viewed in a light most favorable to the verdict, support Wilson's conviction.

[¶ 9] Wilson argues there was no evidence to show C.M. was incompetent to enter into contracts and, although this may have been an ill-advised contract, Wilson did not engage in criminal activity. Additionally, Wilson argues, with regard to the purported loan, the evidence showed he gave C.M. his personal identification information and there is no evidence of the terms of the loan, thus there is no evidence the loan was not going to be repaid. However, Wilson must do more than set forth alternative arguments and facts countering those that support his conviction. The jury, not this Court, has the task of weighing evidence and judging the credibility of the witnesses. *Ebach,* 1999 ND 5, ¶ 24, 589 N.W.2d 566. "A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty." *State v. Hatch,* 346 N.W.2d 268, 277 (N.D.1984). Based on the facts viewed in the light most favorable to the verdict and on the inferences to be drawn, the jury reasonably could have found Wilson guilty beyond a reasonable doubt. Wilson's conviction is supported by sufficient evidence.

### III

[¶ 10] Wilson argues the trial court committed reversible error in failing to properly instruct the jury on the definition of deception.

[¶ 11] On appeal, jury instructions are fully reviewable. *State v. Steffes,* 500 N.W.2d 608, 611 (N.D.1993). Instructions are reviewed as a whole, and we determine "whether they correctly and adequately inform the jury of the applicable law, even though part of the instructions when standing alone may be insufficient or

erroneous." *State v. Hammeren*, 2003 ND 6, ¶ 13, 655 N.W.2d 707. We will reverse only if the instructions, as a whole, are (1) erroneous, (2) relate to a central subject in the case, and (3) affect a substantial right of the accused. *State v. Huber*, 555 N.W.2d 791, 793 (N.D.1996).

[¶ 12] Wilson asserts the information failed to specify the acts of deception, which made the concept of deception general and vague, necessitating a defining instruction to ensure the jury examined this issue properly under N.D.C.C. § 12.1–23–02(2). Wilson concedes he did not request a bill of particulars, nor did he object to the information.

[¶ 13] Wilson requested a jury instruction defining "deception," under N.D.C.C. § 12.1–23–10(2), at both the beginning and end of the trial. However, Wilson's request [1] omitted significant portions of the definition under N.D.C.C. § 12.1–23–10(2). The trial court denied Wilson's request, stating no definition is necessary because the term is common. The trial court also expressed concern over needlessly confusing the jury by parsing the multiple definitions apart and noted that, although there is a statutory definition for "deception," it generally is not given as an instruction because of the commonality of the term. The trial court agreed to provide a definition of "deception" if requested by the jury, and instructed the jury as to the appropriate means of communicating with the trial court during deliberations.

[¶ 14] Wilson's requested jury instruction, as proposed, was not a complete statement of the law. The trial court properly refused Wilson's requested jury instruction. *See, e.g., State v. Hafner*, 1998 ND 220, ¶ 24, 587 N.W.2d 177 (holding, "[a] court must refuse a requested instruction that misstates the applicable law").

[¶ 15] However, we must still consider whether, as a whole, the jury instructions adequately and correctly inform the jury of the applicable law. As previously stated, the trial court has a duty to correctly instruct the jury on the applicable law. *State v. Weaver*, 2002 ND 4, ¶ 16, 638 N.W.2d 30. Thus, even though the trial court had no duty to provide Wilson's specific proposed instruction, a complete instruction defining "deception" may have been necessary to adequately and correctly inform the jury of the applicable law. Wilson argues the trial court was required to provide a definition for "deception" because the term is not a matter of common usage as related to this case. We disagree.

[¶ 16] In *State v. Motsko*, 261 N.W.2d 860, 866 (N.D.1977), we held the trial court did not err in failing to issue a jury instruction defining "deception," as used in a kidnaping statute.[2] We reiterated the holding in *Railway Company v. McCarthy*, 96 U.S. 258, 265–66, 24 L.Ed. 693 (1877), stating, "[i]f the instructions given cover the case and are correct, that is enough" and concluded "deception" is a

---

1. According to the trial transcript, Wilson's requested instruction incorporated portions of N.D.C.C. § 12.1–23–10(2)(a) and (g), and apparently would have resulted in an instruction stating: deception means creating or reinforcing a false impression as to fact, law, status, value, intention, or other state of mind, or any other scheme to defraud; but deception as to a person's intention to perform a promise may not be inferred from the fact

alone that the person did not substantially perform the promise unless it is part of a continuing scheme to defraud.

2. Under the "definitions" section of the kidnaping chapter, "Restraint is 'without consent' if it is accomplished by: a. force, intimidation, or deception." N.D.C.C. § 12.1–18–04(2).

word of common understanding. *Motsko,* at 866. We also stated that, although the defendant did not request the instruction, in the event such a request was made, it was within the discretion of the trial court to decide whether to instruct the jury accordingly. *Id.; see also U.S. v. Lee,* 356 F.3d 831, 838 (8th Cir.2003) (holding, "[a] defendant is not entitled to instructions on the definition of every word in an instruction. [T]he word 'knowingly' is not beyond the ken of a jury or common layperson.") (citations omitted).

[¶ 17] Although we are contemplating a different offense in this case, we believe our holding in *Motsko* is applicable here. The trial court found the word had a common meaning and an instruction might only serve to unnecessarily confuse the jury. "Frequently, to attempt to explain understandable language is merely to confuse." *Motsko,* at 866. We conclude "deception," as it applies to Wilson's case, is a term of common understanding, easily understood by the jury. As such, the trial court did not err in failing to provide the jury with a definition of "deception."

[¶ 18] The instructions, as a whole, adequately and correctly inform the jury of the law, even though they do not include a definition for "deception." Because we conclude the jury instructions were not erroneous, it is unnecessary to continue our inquiry to determine whether Wilson's alleged error related to a central subject in the case or affected a substantial right. *See State v. Huber,* 555 N.W.2d 791, 793 (N.D.1996) (setting forth three criteria for analyzing alleged jury instruction errors).

### IV

[¶ 19] For the reasons stated, the trial court's judgment of conviction is affirmed.

[¶ 20] GERALD W. VANDE WALLE, C.J., GORDON O. HOBERG, S.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 21] The Honorable GORDON O. HOBERG, S.J., sitting in place of SANDSTROM, J., disqualified.