2007 ND 6

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Ryan STENSAKER, Defendant and Appellant.**

Nos. 20050453, 20050454.

Supreme Court of North Dakota.

Jan. 11, 2007.

Nicole E. Foster, State's Attorney, Williston, N.D., for plaintiff and appellee.

Tom P. Slorby, Minot, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]   Ryan Stensaker appeals after a jury found him guilty of criminal attempt to manufacture methamphetamine and he conditionally pled guilty to fleeing by vehicle.   Concluding that the jury instructions taken as a whole adequately informed the jury on the law and that the intentional gathering and preparation of ingredients, whose purchase, possession, or transportation is regulated by state law, with the intent to manufacture methamphetamine provides sufficient evidence for criminal attempt to manufacture methamphetamine, we affirm.

I

[¶ 2]   In May 2005, the State charged Stensaker with fleeing or attempting to elude a police officer, possession of a controlled substance, and criminal attempt to manufacture methamphetamine.   According to Stensaker, he was charged in Williston municipal court with "Fleeing a Police Officer in violation of N.D.C.C. § 12.1–08–11 or equivalent ordinance," to which he pled guilty.

[¶ 3]   In   October   2005,   Stensaker moved to dismiss the charge of "fleeing or attempting   to   elude   a   police   officer." Stensaker argued that prosecution for this offense was "barred by the Double Jeopardy Clause contained in the Fifth Amendment of the United States Constitution and Article 1 Section 12 of the North Dakota Constitution" because he had already pled guilty in municipal court to the charge of fleeing a police officer.   The district court denied   Stensaker's   motion,   concluding "there are different elements enough to justify that they would be two separate offenses, as there are separate elements under the test. . . ."

[¶ 4]   At Stensaker's jury trial on the criminal-attempt-to-manufacture charge, a Williston police officer testified that he had recognized Stensaker driving and knew that his license was suspended.   The officer testified that he tried to stop him by using his emergency lights and siren.   After a brief pursuit, Stensaker stopped his vehicle and ran from the officer.   The officer testified he found Stensaker hiding nearby, arrested him, and went back to the vehicle Stensaker had been driving.   The officer searched the vehicle and in it found

a small plastic bag filled with 84 pills, empty blister packs and cold medicine boxes, cellophane, coffee filters with one containing some sort of residue, and a small plastic jug filled with a pungent liquid. Lab testing revealed the residue was methamphetamine, the pills were ephedrine or pseudoephedrine, and the liquid was anhydrous ammonia. The officer also testified that he found a vehicle insurance card listing Terry Wold as the insured and that the vehicle was also registered in Wold's name. Another officer testified that when she interviewed Stensaker's brother, he said that the vehicle Ryan had been driving was actually purchased by him as a "rig vehicle" for driving to the oil fields.

[¶ 5] The jury found Stensaker guilty of criminal attempt to manufacture methamphetamine. The district court entered a criminal judgment based on Stensaker's conditional guilty plea for fleeing or attempting to elude a peace officer. Stensaker appeals both judgments.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This appeal is timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. § 29–28–06.

## II

[¶ 7] Stensaker argues the district court "erred in its instruction setting forth the essential elements" of criminal attempt to manufacture methamphetamine and by not including his requested instruction "that preparation for an offense is insufficient to constitute attempt."

### A

[¶ 8] "On appeal, jury instructions are fully reviewable." *State v. Wilson*, 2004 ND 51, ¶ 11, 676 N.W.2d 98 (citing *State v. Steffes*, 500 N.W.2d 608, 611 (N.D.1993)). "Instructions are reviewed as a whole, and we determine 'whether they correctly and adequately inform the jury of the applicable law, even though part of the instructions when standing alone may be insufficient or erroneous.'" *Id.* (quoting *State v. Hammeren*, 2003 ND 6, ¶ 13, 655 N.W.2d 707). "We will reverse only if the instructions, as a whole, are (1) erroneous, (2) relate to a central subject in the case, and (3) affect a substantial right of the accused." *Wilson*, at ¶ 11 (citation omitted).

[¶ 9] "The crime of attempt does not exist in the abstract, but rather exists only in relation to other offenses; a defendant must be charged with an attempt to commit a specifically designated crime, and it is to that crime one must look in identifying the kind of intent required.... It is not enough to show that the defendant intended to do some unspecified criminal act." 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.3(a) (2d ed.2003). "Our criminal attempt statute is derived from the identical provision in the proposed Federal Criminal Code. Thus, the history of the federal code can be persuasive when we interpret our statute." *State v. Erban*, 429 N.W.2d 408, 412 (N.D. 1988) (citation omitted). The drafters of the proposed Federal Criminal Code explained:

> Implicit in the notion of attempt is the requirement that *whatever the person is doing* is being done with the purpose of committing a crime. Present Federal case law recognizes this. Proposed section 1001 makes this requirement explicit by requiring that the conduct be intentionally engaged in *but otherwise with the culpability required for the offense.*
>
> . . . .

... it is explicit that, except for the intentional conduct constituting the substantial step, the requisite culpability is that provided for in the definition of the offense .... we recognize, by precise definition and use of terms, that different elements of a crime may require different kinds of culpability.

I *Working Papers of the National Commission on Reform of Federal Criminal Laws* 354–55 (1970) (emphasis added) (footnotes omitted).

[¶ 10] In this case, the specifically designated crime is manufacturing a controlled substance. Under N.D.C.C. § 19–03.1–23(1), "it is unlawful for any person to willfully ... manufacture ... a controlled substance...." In North Dakota, "willfully" encompasses three different culpability levels: "intentionally, knowingly, or recklessly." N.D.C.C. § 12.1–02–02(1)(e). An individual engages in conduct "intentionally" if it is the individual's purpose to engage in the conduct, N.D.C.C. § 12.1–02–02(1)(a); "knowingly" if "he knows or has a firm belief, unaccompanied by substantial doubt, that he is doing so, whether or not it is his purpose to do so," N.D.C.C. § 12.1–02–02(1)(b); "recklessly" if "he engages in the conduct in conscious and clearly unjustifiable disregard of a substantial likelihood of the existence of the relevant facts or risks, such disregard involving a gross deviation from acceptable standards of conduct," N.D.C.C. § 12.1–02–02(1)(c).

[¶ 11] Under N.D.C.C. § 19–03.1–01(16), "manufacture" means:

the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis and includes any packaging or repackaging of the substance or labeling or relabeling of its container....

N.D.C.C. § 19–03.1–01(16). Therefore, if a person is found to have performed any of these acts intentionally, knowingly, or recklessly, he is guilty of manufacturing a controlled substance.

[¶ 12] Section 12.1–06–01, N.D.C.C., governs criminal attempt and provides in part:

A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime. Factual or legal impossibility of committing the crime is not a defense, if the crime could have been committed had the attendant circumstances been as the actor believed them to be.

N.D.C.C. § 12.1–06–01(1). To satisfy the element of "acting with the kind of culpability otherwise required for commission of a crime," we look to the culpability required for manufacturing a controlled substance, which is "willfully." Therefore, whatever the accused has done, he must have had the willful criminal intent to manufacture a controlled substance. To satisfy the next element of attempt, the culpability level for conduct constituting a substantial step toward the commission of the crime is set as the highest level of culpability—"intentionally." *See* N.D.C.C. § 12.1–06–01(1). This is so, in part, because the underlying crime was never completed; in other words, the substantial-step requirement "is intended to prevent a conviction based on the accused's

mere declaration of his criminal intent." *A Hornbook to the North Dakota Criminal Code,* 50 N.D.L.Rev. 639, 682 (1974) (footnote omitted); *accord* I *Working Papers* at 357. Therefore, the State faces a higher burden to convince the fact-finder that the accused should be punished, even for falling short of completing the underlying offense. *See* 2 LaFave, *supra,* § 11.2(b) (discussing the rationale of attempt).

■ [¶ 13] In this case, the State alleged that the substantial step was "obtaining and preparing precursors for the manufacture of methamphetamine." Therefore, if a jury could find that it was Stensaker's purpose to obtain and prepare the precursors and that he did so with the requisite willful culpability to manufacture methamphetamine, he would be guilty of criminal attempt to manufacture methamphetamine. He would not be guilty if he acted "knowingly or recklessly" in obtaining and preparing the precursors, even though he did so with the required culpability to manufacture methamphetamine, because "[u]nder the prevailing view, an attempt ... cannot be committed by recklessness or negligence or on a strict liability basis, even if the underlying crime can be so committed." 2 LaFave, *supra,* § 11.3.

■ [¶ 14] In its instructions, the district court correctly provided the culpability level for the underlying offense of unlawful manufacture of a controlled substance, which is "willfully." N.D.C.C. § 19–03.1-23(1). The district court also included the statutory definitions of "intentionally, knowingly, or recklessly." After a rather lengthy debate by both sides in chambers, the district court issued a final jury instruction for the offense of "criminal attempt/manufacture a controlled substance, methamphetamine." This instruction was contained on a single page, captioned with the title in capital letters and underlined like the other various instructions, e.g., "Definitions—Controlled Substance Instructions," "Duty of Jury," and "Weight and Credibility." The district court also added a sentence to the instruction for criminal attempt: "It is unlawful to willfully manufacture a controlled substance." This properly states the culpability required for the offense of unlawful manufacture of a controlled substance under N.D.C.C. § 19–03.1–23(1); however, the district court's instruction includes the phrase "willfully attempted":

*CRIMINAL ATTEMPT/MANUFACTURE A CONTROLLED SUBSTANCE, METHAMPHETAMINE*

A person is guilty of Criminal Attempt if, acting with the kind of culpability otherwise required for commission of a crime, that person intentionally engages in conduct that constitutes a substantial step toward commission of the crime. "A substantial step" is any conduct that tends toward but falls short of actual commission and is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.

It is unlawful to willfully manufacture a controlled substance.

ESSENTIAL ELEMENTS OF THE OFFENSE

■ The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, the following essential elements:

1. On or about May 19, 2005, in Williams County, North Dakota, the Defendant, Ryan Stensaker;

2. Willfully attempted to manufacture a controlled substance, methamphetamine, by obtaining and prepar-

ing precursors for the manufacture of methamphetamine with the intent to manufacture methamphetamine.

Although "willfully" encompasses "intentionally, knowingly, and recklessly," the offense of criminal attempt requires—and therefore the jury instructions must convey—that "in order to find [Stensaker] guilty it had to find that he intentionally engaged in conduct that constituted a substantial step toward the commission of a crime and that [he willfully] intended to manufacture methamphetamine." *See State v. Erban*, 429 N.W.2d 408, 412 (N.D. 1988). In *State v. Jaster*, we agreed with the district court in its refusal of Jaster's request for a jury instruction on "willfully" when the prescribed culpability was "recklessly." 2004 ND 223, ¶ 20, 690 N.W.2d 213. We noted that although " 'willfully' is defined in N.D.C.C. § 12.1–02–02(1)(e) as including the term 'recklessly[,]' [i]nclusion of the term 'willfully' in the instruction is therefore unnecessary and would likely result in misleading or confusing the jurors." *Jaster*, at ¶ 21. The essential-elements instruction must substantively correspond only to the underlying offense—here, manufacturing a controlled substance. In other words, there should be two distinctly separate instructions: (1) criminal attempt; and (2) manufacturing a controlled substance.

[¶ 15] While the phrase "willfully attempted" in the instruction for the charged offense may have been insufficient without more, the jury instructions, taken as a whole, correctly and adequately informed the jury of the applicable law. The correct instruction should have omitted the word "willfully" before the word "attempted" from the essential elements, because the underlying offense of manufacturing a controlled substance provides only the kind of culpability otherwise required for commission of a crime when criminal at-

tempt is charged. The jury's focus in this case was whether Stensaker intentionally obtained and prepared the precursors for methamphetamine with a willful intent to manufacture methamphetamine. The jury received instructions that defined the relevant culpability levels and a proper instruction on criminal attempt with an additional sentence that properly recited the culpability for the underlying offense. We conclude that the jury instruction for criminal attempt to manufacture a controlled substance relates to a central subject of this case and affects Stensaker's substantial rights; however, we do not conclude that taken as whole, the instructions are erroneous.

B

[¶ 16] Stensaker also argues that the district court erred when it failed to include the instruction, "preparation for an offense is insufficient to constitute attempt."

[¶ 17] "The district court is not required to instruct the jury in the exact language sought by a party if the instructions are not misleading or confusing, and if they fairly advise the jury of the law on the essential issues of the case." *Strand v. Cass County*, 2006 ND 190, ¶ 7, 721 N.W.2d 374 (citation omitted).

[¶ 18] Stensaker's requested language has met with long- and well-established criticism, because although "[p]reparation is not an attempt . . . some preparations may amount to an attempt. It is a question of degree." *United States v. Coplon*, 185 F.2d 629, 633 (2d Cir.1950) (quoting *Commonwealth v. Peaslee*, 177 Mass. 267, 272, 59 N.E. 55, 56 (1901) (Holmes, C.J.)); *see also* I *Working Papers* at 355 ("the Federal courts sought to improve on the old common law distinction between 'mere preparation,' which is not an attempt, and conduct beyond that,

which constitutes an attempt"). Although "it is difficult to draw the line between the preparation to commit an offense, which does not constitute an attempt, and the taking of a substantial step toward the commission of a crime, which does," that inquiry is left to the fact-finder. *See* 21 Am.Jur.2d *Criminal Law* § 177 (1998). "[T]o distinguish preparation from attempt empirically is difficult if not impossible." Jerome Hall, *Criminal Attempt—A Study of Foundations of Criminal Liability,* 49 Yale L.J. 789, 821 (1940). Stensaker relies on *State v. Maresch,* 75 N.D. 229, 27 N.W.2d 1 (1947), which predates the revision of our criminal law and does not conform to our present criminal attempt statute. *See* 1973 N.D. Sess. Laws chs. 116, 117 (establishing the effective date of July 1, 1975, for the revision). Therefore, the district court did not err by rejecting Stensaker's proposed instruction.

### III

[¶ 19] Stensaker argues that the evidence was insufficient as a matter of law to support his conviction of criminal attempt to manufacture methamphetamine.

[¶ 20] At trial, Stensaker moved for an acquittal under N.D.R.Crim.P. 29. Therefore, he preserved the issue of sufficiency of the evidence for appellate review. *State v. Steen,* 2000 ND 152, ¶ 16, 615 N.W.2d 555. "This Court will reverse a conviction on the ground of insufficient evidence only if, after viewing the evidence and all reasonable inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *Id.* at ¶ 17 (citation omitted).

[¶ 21] "A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts." *State v. Noorlun,* 2005 ND 189,

¶ 20, 705 N.W.2d 819 (citing *State v. Steinbach,* 1998 ND 18, ¶ 16, 575 N.W.2d 193). "A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Noorlun,* at ¶ 20 (citation omitted). "Moreover, a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict." *Id.* (citing *State v. Wilson,* 2004 ND 51, ¶ 9, 676 N.W.2d 98). "Often, the only method of proving criminal intent is by circumstantial evidence." *State v. Olson,* 552 N.W.2d 362, 364 (N.D.1996) (citation omitted).

[¶ 22] Whether the accused committed an act sufficient for an attempt is a question of fact. N.D.C.C. § 12.1–06–01. The State alleged the conduct constituting a substantial step was "obtaining and preparing precursors for the manufacture of methamphetamine." Therefore, there had to have been enough evidence for a jury to find that Stensaker intentionally obtained and prepared precursors with the intent to manufacture methamphetamine to support the guilty verdict.

[¶ 23] An agent with the Northwest Narcotics Task Force testified that the materials found in the vehicle Stensaker was driving were insufficient to make methamphetamine. The agent testified that Stensaker possessed "two prepared precursors"—the cold pills and the anhydrous ammonia. These are two of the six required chemical components of methamphetamine. According to the agent's testimony, the cold pills and anhydrous ammonia are the two most difficult elements of methamphetamine to obtain, because each is regulated by state law. The agent testified that Stensaker possessed enough of each of those two ingredients to manufac-

ture methamphetamine, but he still needed the other over-the-counter items, including lithium batteries, gasoline, and drain cleaner, to complete the manufacturing process. The agent testified that the "combination . . . [of] the cold pills, the pseudoephedrine, ephedrine, and . . . the anhydrous ammonia, as well as the methamphetamine and the coffee filters indicate [an] intention to manufacture methamphetamine."

[¶ 24] After viewing the evidence and all reasonable inferences in the light most favorable to the verdict, we conclude the evidence was sufficient for a jury to find Stensaker guilty of criminal attempt to manufacture methamphetamine.

## IV

[¶ 25] Stensaker argues the district court erred by improperly admitting evidence that he owned or admitted to possessing the methamphetamine in the vehicle as demonstrated by his guilty plea to that charge. A review of the trial transcript shows there was no evidence of Stensaker's guilty plea to the possession of methamphetamine charge admitted at trial; however, the district court properly admitted evidence that the residue found on one of the coffee filters was, in fact, methamphetamine.

[¶ 26] Stensaker also argues that he was denied a fair trial because of the narcotics agent's unresponsive answers on cross-examination.

[¶ 27] The district court is allowed "reasonable control over the mode and order of interrogating witnesses and presenting evidence. . . ." N.D.R.Ev. 611(a). "The propriety of examination and cross-examination of witnesses . . . are matters largely within the sound discretion of the trial court . . . [and] will not be disturbed in absence of a showing of abuse of discretion." *Killmer v. Duchscherer*, 72 N.W.2d 650, 657 (N.D.1955).

[¶ 28] When the agent testified that Stensaker had purchased four boxes of cold pills, Stensaker objected to the apparent assumption or conclusion. The district court sustained the objection. The district court again sustained Stensaker's objection to the State's question that asked for a conclusion as to whom the cold pills belonged. Stensaker's objection was overruled when he objected to the agent's opinion on how anhydrous ammonia is safely obtained and stored, because the district court noted that the agent had been admitted as an expert. The agent did admit that she did not know who actually "acquired or obtained" miscellaneous items found in Stensaker's vehicle.

[¶ 29] Stensaker's claim that the agent was a non-responsive witness, or his implication that the district court failed to properly manage the examination of the witness, lacks merit, both factually and for his failure to cite any authority for his proposition that he was denied a fair trial. The district court did not abuse its discretion in its conduct of the agent's examination.

## V

[¶ 30] Stensaker argues that double jeopardy bars his conviction under N.D.C.C. § 39–10–71 for fleeing in a motor vehicle, because he had been convicted of fleeing on foot in municipal court "under NDCC § 12.1–08–11 or equivalent ordinance."

[¶ 31] Under the "same elements" or "Blockburger" test from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a court analyzes each offense to conclude "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *State v. Bertram*, 2006 ND 10, ¶ 14, 708 N.W.2d 913 (internal quotations

and citations omitted). Furthermore, "[t]he same evidence may be used to prove separate offenses." *City of Fargo v. Hector*, 534 N.W.2d 821, 824 (N.D.1995) (footnote omitted).

[¶ 32] "In the absence of a statutory requirement, courts of general jurisdiction may not take judicial notice of a municipal ordinance, and the ordinance must be introduced into evidence or stipulated to by the parties just as any other evidence." *Keyes v. Amundson*, 391 N.W.2d 602, 607 (N.D.1986) (citations omitted); *see, e.g.*, N.D.C.C. § 40–18–19 ("On all appeals from a determination in a municipal court, the district court shall take judicial notice of all of the ordinances of the city."). Even when judicial notice of a municipal ordinance is required, "it is essential that the trial court be supplied with the necessary information." *City of Mandan v. Mertz*, 399 N.W.2d 298, 300 (N.D.1987).

[¶ 33] Prior to trial, Stensaker moved to dismiss on grounds of double jeopardy, but he did not provide the Williston ordinance in his motion, nor did he cite to it. Without the city ordinance or the charging documents, we are prevented from comparing the elements of the two offenses. There might be evidence of the State's stipulation to the substitution of the state law for the city ordinance, because the State did not object to the absence of the ordinance and continued to refer to N.D.C.C. § 12.1–08–11 rather than the Williston ordinance.

[¶ 34] Even if the City of Williston had adopted N.D.C.C. § 12.1–08–11 verbatim or the State had stipulated to the substitution, double jeopardy still does not attach, because one statute governs flight by motor vehicle and the other governs flight by means expressly other than by motor vehicle. Section 12.1–08–11, N.D.C.C., "fleeing a police officer," provides in part:

Any person, *other than the driver of a motor vehicle under section 39–10–71*, who willfully fails or refuses to stop or who otherwise flees or attempts to elude, in any manner, a pursuing peace officer, when given a visual or audible signal to stop, is guilty of a class B misdemeanor for a first or second offense and a class A misdemeanor for a subsequent offense.

N.D.C.C. § 12.1–08–11 (emphasis added). Stensaker entered a conditional plea of guilty in the district court for his violation of N.D.C.C. § 39–10–71, which governs fleeing or attempting to elude a peace officer, and provides in part:

Any driver of a motor vehicle who willfully fails or refuses to bring the vehicle to a stop, or who otherwise flees or attempts to elude, in any manner, a pursuing police vehicle or peace officer, when given a visual or audible signal to bring the vehicle to a stop, is guilty of a class A misdemeanor for a first offense and a class C felony for a subsequent offense within three years. An individual who violates this section while fleeing after or in the commission of a felony is guilty of a class C felony.

N.D.C.C. § 39–10–71(1). A comparison of these two offenses reveals that they are two distinctly different crimes. Therefore, double jeopardy cannot attach.

## VI

[¶ 35] We affirm the judgments of the district court.

[¶ 36] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.