Filed 12/15/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 210

State of North Dakota, Plaintiff and Appellee

v.

Rondale Grant, Defendant and Appellant

No. 20090076

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven L. Marquart, Judge.

AFFIRMED AND REMANDED.

Opinion of the Court by Kapsner, Justice.

Tanya Johnson Martinez (argued), Assistant State’s Attorney, Courthouse, P.O. Box 2806, Fargo, ND 58108-2806, for plaintiff and appellee.

Benjamin C. Pulkrabek (argued), 402 1st St. NW, Mandan, ND 58554-3118, for defendant and appellant.

State v. Grant

No. 20090076

Kapsner, Justice.

[¶1] Rondale Grant appeals from a criminal judgment entered after a jury found him guilty of gross sexual imposition.  We hold the district court did not abuse its discretion by admitting a nurse practitioner’s report into evidence, and the State produced sufficient evidence to convict Grant of the crime.  We affirm Grant’s conviction.  However, because the criminal judgment does not clearly state the jury entered a verdict of guilty, we remand to the district court for correction of the clerical error.

I.

[¶2] Defendant Grant and Randie Johnson have three children together, including daughter K.D.J.  In February 2007, Cass County Social Services removed the children from their parents’ home and placed them with their grandmother, Beth Johnson.  In April 2007, eight-year-old K.D.J. began seeing an in-home therapist.  At a regular therapy session at Beth Johnson’s home on June 7, 2007, K.D.J. told the therapist Grant made her watch sex movies and explained to her how babies are made.  The therapist inquired further, and K.D.J. said Grant had touched her private parts and made her touch his as well.  At the end of the session, the therapist informed Cass County Social Services and law enforcement about K.D.J.’s allegations.  The State charged Grant with gross sexual imposition, claiming he had penetrated K.D.J.’s vagina with his fingers and coerced her to place his penis in her mouth.

[¶3] At trial, K.D.J. testified Grant made her watch “sex movies” with him on approximately ten different occasions.  While watching the films, K.D.J. testified Grant told her to pull her pants down, which she did, and then he did the same.  K.D.J. testified Grant touched her vagina with his fingers, mouth, and penis, and also touched her mouth with his penis.  She stated Grant rubbed lotion on her vagina so his penis could “go through,” but it did not because it was too big.  K.D.J. also recalled one occasion where Grant performed a sex act in the bedroom she shared with her two younger siblings.  K.D.J. testified she was sleeping and woke up to find her legs hanging over the side of the bed and Grant licking her vagina.

[¶4] Nurse practitioner Sheryll Clapp testified about a physical examination she performed on K.D.J. on June 20, 2007.  Following the examination, Clapp created a report of her findings.  The report contained information regarding K.D.J.’s family and medical history, which was provided by Beth Johnson and Cass County Social Services.  The report stated “[K.D.J.] had told [Beth Johnson] that her father would ‘hit her in the head,’” and “Beth Johnson is not sure of what Dale Grant’s (biologic father) health history is.  She states that there is drug use but she is unsure of any other history.”  In addition, the report noted:  “[Beth Johnson] also states that [K.D.J.] was somewhat fearful and anxious when she first came to see them but has been much more talkative since her disclosure [to the therapist].”  Clapp testified the historical information was necessary to properly diagnose and treat K.D.J.

[¶5] The nurse practitioner’s report also included statements made by K.D.J. in response to Clapp’s questions about her physical and mental condition.  The report stated K.D.J. said she and Grant watched “porn movies together just a couple of times.”  It also stated K.D.J. said “twice [Grant] touched my private parts” and he “put lotion in my private area with his hand.”  In addition, the report stated K.D.J. said Grant placed his penis in her mouth and it was hard at the time.  Finally, the report stated K.D.J. said Grant told her “nothing would come out [of his penis] unless he got excited.”

[¶6] In its conclusion, the report stated the examination produced no residual physical evidence of sexual abuse.  However, the report also noted the lack of physical evidence did not preclude a diagnosis of sexual abuse due to the length of time between the alleged contact and exam, and K.D.J. was consistent in her description of the alleged sexual contact when discussing it with different persons.  The report said K.D.J. described physical symptoms “consistent with the history of vulvar genital penetration” and that she demonstrated a knowledge of ejaculation abnormal for a female her age.  Therefore, the report recommended K.D.J. receive counseling for posttraumatic stress resulting from inappropriate sexual contact.

[¶7] In a pretrial hearing, the State informed the district court and Grant’s counsel that it planned to offer a redacted version of the nurse practitioner’s report into evidence.  The state’s attorney said the report was redacted to eliminate any information personally identifying K.D.J.  Grant’s counsel did not request additional redaction or otherwise object to the report during the pretrial hearing.  However, when the State offered the report into evidence at trial, Grant’s counsel did object, arguing the report contained hearsay that was not admissible under any exceptions to the hearsay rule.  Specifically, Grant’s counsel argued the report did not qualify under the business records exception, N.D.R.Ev. 803(6), or the exception for statements for the purpose of medical diagnosis, N.D.R.Ev. 803(4), because “[the report] goes far beyond what’s necessary for a diagnosis.”  The State argued the report was admissible under both exceptions.  The district court found the report met the requirements of the business records exception and admitted it over Grant’s objection.

[¶8] At the close of the State’s case-in-chief, Grant moved for a judgment of acquittal under N.D.R.Crim.P. 29, which the district court denied.  Grant then testified in his own defense.  He denied ever touching K.D.J. in a sexual manner or watching pornographic videos with her.  Grant testified he caught K.D.J. watching a pornographic video she had found in his and Randie Johnson’s bedroom.  He stated he took the video from K.D.J. and answered her questions about what the people in the video were doing.   Grant testified this incident provided K.D.J. with the information that enabled her to testify about sexual acts.

[¶9] The jury found Grant guilty of gross sexual imposition, and the district court entered a criminal judgment against him.  Grant now appeals, arguing the district court abused its discretion by admitting the nurse practitioner’s report and the State failed to produce sufficient evidence to convict him of the crime.

II.

[¶10] This Court recognizes district courts have broad discretion regarding evidentiary matters.  
Interest of B.B.
, 2007 ND 115,   6, 735 N.W.2d 855.  Therefore, we will not reverse a court’s decision to admit evidence absent an abuse of discretion.  
Id.
  “A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or if it misinterprets or misapplies the law.”  
Id.

[¶11] The nurse practitioner’s report directly and indirectly quoted both K.D.J. and Beth Johnson.  The report provided K.D.J. said she and Grant watched “porn movies together just a couple of times,” “twice [Grant] touched my private parts,” and he “put lotion in my private area with his hand.”  In addition, the report stated K.D.J. said Grant placed his penis in her mouth, the penis was hard at the time, and Grant told her “nothing would come out [of his penis] unless he got excited.”  Further, the report provided Beth Johnson said K.D.J. told her “that [Grant] would ‘hit her in the head.’”  The report also stated “Beth Johnson is not sure of what Dale Grant’s (biologic father) health history is.  She states that there is drug use but she is unsure of any other history.”  Finally, the report provided:  “[Beth Johnson] also states that [K.D.J.] was somewhat fearful and anxious when she first came to see them but has been much more talkative since her disclosure.”  Both Beth Johnson and K.D.J. testified at trial.

[¶12] Rule 801, N.D.R.Ev., defines “hearsay” as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”  Although N.D.R.Ev. 802 states hearsay is generally inadmissible, N.D.R.Ev. 803 provides several exceptions to the general rule, two of which are pertinent to this matter.  Under N.D.R.Ev. 803, the rule against hearsay does not exclude:

(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

. . . . 

(6) Records of Regularly Conducted Business Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term “business” as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

. . . .

“Rule 803, N.D.R.Ev., is an adoption of Fed.R.Evid. 803, and we may look to federal courts’ interpretations of the federal rule as a guide in construing our rule.”  
Interest of B.B.
, 2007 ND 115,   7, 735 N.W.2d 855.

A.

[¶13] The nurse practitioner’s report does not meet the criteria set forth for admissibility of a business record under N.D.R.Ev. 803(6).  A record does not qualify for admission under the rule simply because the author created it during the ordinary course of business.  
Interest of B.B.
, 2007 ND 115,   8, 735 N.W.2d 855 (citing Fed.R.Evid. 803(6) Advisory Comm. Note; 
In re Termination of Parent-Child Relationship of E.T.
, 808 N.E.2d 639, 643-44 (Ind. 2004)).  “To satisfy the business records exception, each participant in the creation of the record must be acting in the course of regularly conducted business to ensure the trustworthiness and reliability of the information.”  
Interest of B.B.
, at   8 (citing 
Cameron v. Otto Bock Orthopedic Indus., Inc.
, 43 F.3d 14, 16 (1st Cir. 1994)).  Nurse practitioner Clapp recorded K.D.J. and Beth Johnson’s statements in the regular course of business.  However, Beth Johnson and K.D.J. were not acting in the regular course of business when they made the statements.  Therefore, because each participant in the creation of the nurse practitioner’s report was not acting in the course of regularly conducted business, the district court erred by admitting the report under N.D.R.Ev. 803(6).

B.

[¶14] At trial, the State argued the nurse practitioner’s report was admissible under the business records exception, N.D.R.Ev. 803(6), as well as the exception for statements for the purpose of medical diagnosis or treatment, N.D.R.Ev. 803(4).  Therefore, although the district court erred by admitting the report under the business records exception, the State is entitled to argue on appeal that the report was admissible under N.D.R.Ev. 803(4).  
State v. Bernstein
, 2005 ND App. 6,   20, 697 N.W.2d 371 (“When the judgment below is entirely favorable to the appellee, he is entitled to attempt to save the judgment upon any ground asserted in the trial court.”).  
See also
 
State v. Sabinash
, 1998 ND 32,   19, 574 N.W.2d 827; 
Olson v. University of North Dakota
, 488 N.W.2d 386, 388 (N.D. 1992); 
Livingood v. Meece
, 477 N.W.2d 183, 188 (N.D. 1991); 
Tkach v. American Sportsman, Inc.
, 316 N.W.2d 785, 787 (N.D. 1982).

[¶15] We have previously considered the application of N.D.R.Ev. 803(4) in sexual assault cases.  
See
 
State v. Muhle
, 2007 ND 132,    7-12, 737 N.W.2d 647; 
State v. Janda
, 397 N.W.2d 59, 62-63 (N.D. 1986).  In 
Janda
, at 63, we noted the rule takes an expansive approach to admissibility:

Rule 803(4), N.D.R.Ev., was drawn, verbatim, from Rule 803(4), [Fed.]R.Ev., which “considerably liberalized prior practice pertaining to the admissibility of statements made for purposes of medical diagnosis or treatment.”  4 J. Weinstein and M. Berger, 
Weinstein’s Evidence
,   803(4)[01], p. 803-143 (1985). . . .  “While some courts admit only statements of present symptoms, others have extended the rule to past symptoms, and a few have in addition admitted statements which describe the nature and cause of the injury insofar as they bear on treatment.  
This last and most expansive approach is expressed in Rule 803(4).
” (Emphasis added.)  
Id.
 at 803-143.

This Court also recognized that, when alleged victims of sexual assault seek medical treatment, health care providers must diagnose and treat both physical and psychological trauma.  
Janda
, at 63 (“[H]ealth care providers examining one claiming to be the victim of a sexual assault must diagnose whether or not the alleged victim has suffered psychological trauma and, if so, its nature and extent, and treat that as well.”).  As a result, where an individual is alleged to be the victim of sexual assault, statements reasonably pertinent to medical diagnosis and treatment of both physical and psychological trauma are admissible under N.D.R.Ev. 803(4).  
Id.
; 
Muhle
, at    11-12.

[¶16] The statements in the nurse practitioner’s report made by K.D.J. were given in response to questions asked by Clapp prior to the physical examination.  These statements unquestionably fall within N.D.R.Ev. 803(4).  
See
 
Muhle
, 2007 ND 132,   11, 737 N.W.2d 647 (“[Q]uestions regarding the cause or external source of symptoms or pain, including [the alleged victim’s] responses to those questions, fall within N.D.R.Ev. 803(4).”).  The statements in the report made by Beth Johnson were similarly given in response to questions Clapp asked prior to the physical examination.  Clapp testified that the statements made by Beth Johnson were for the purpose of diagnosis and treatment; therefore, the statements were also admissible under N.D.R.Ev. 803(4).

[¶17] N.D.R.Ev. 803(4) does not limit its applicability to statements made by the person seeking medical treatment, nor does the rule otherwise identify the class of declarants to whom it applies.  The rationale underlying N.D.R.Ev. 803(4) is that a person seeking medical treatment knows the effectiveness of the treatment relies in part upon the accuracy of the information provided.  
State v. Long
, 628 N.W.2d 440, 443 (Iowa 2001) (citing 4 J. Weinstein and M. Berger, 
Weinstein’s Evidence
,   803(4)[01], p. 803-152 (1994)) (discussing Iowa Rule of Evidence 803(4), currently  Rule 5.803(4), which is identical to N.D.R.Ev. 803(4)).  This knowledge motivates the person seeking medical diagnosis or treatment to speak truthfully and reduces concerns regarding the fabrication of hearsay.  
Long
, at 443.  Importantly, the motivation to speak truthfully exists not simply when the declarant is seeking medical treatment, but also when the declarant is in a close relationship with the person seeking medical treatment.  
See
 
id.
 at 444 (“Third persons who have a strong motivation to obtain satisfactory treatment or diagnosis for a person in a close relationship, such as a parent or spouse, would ordinarily be motivated to be truthful. In fact, courts have generally applied the rationale of rule 803(4) in those circumstances.”).

[¶18] Health care providers often rely upon the information provided by adults to properly diagnose and treat children.  Nurse practitioner Clapp stated it is generally important to obtain a medical history from a custodial adult when examining a child “[b]ecause you get insight [from the custodial adult] on, one, their past medical history which a child doesn’t always — isn’t always able to give you.  But also you get some insight on the child’s behavior, any concerns that you have, any concerns that the custodial adult has for them.”

[¶19] Therefore, we hold courts may admit statements for the purpose of diagnosis or treatment under N.D.R.Ev. 803(4) made by the person seeking treatment or a third party, so long as the relationship between the person seeking treatment and third party is sufficiently close to ensure the guaranty of trustworthiness inherent in the rule applies under the circumstances.  
See
 
United States v. Yazzie
, 59 F.3d 807, 813 (9th Cir. 1995) (“In most circumstances, we believe that statements to a doctor by a parent of an injured child could easily qualify as a statement for the purpose of obtaining a proper medical diagnosis.”); 
Stull v. Fuqua Indus., Inc.
, 906 F.2d 1271, 1274 (8th Cir. 1990) (“Hence, to fall within [Rule 803(4)], the statement must be obtained from the person seeking treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent.”); 
Valmain v. State
, 5 So.3d 1079, 1084 (Miss. 2009) (with reference to Rule 803(4), holding a trial court did not abuse its discretion by admitting statements made by a mother to a nurse who was treating the mother’s child); 
Long
, 628 N.W.2d at 444 (recognizing statements made by someone other than the person seeking treatment are admissible under Rule 803(4), if the declarant’s motive is to promote medical treatment); 
Sandoval v. State
, 52 S.W.3d 851, 856-57 (Tex. Ct. App. 2001) (“[W]e conclude the fact that the information provided in the medical records came from complainant’s mother does not affect the admissibility of the statements therein [under 803(4)]. . . .  In circumstances where the parent is giving the information to assist in the diagnosis and treatment of the child, we think the reliability of the statements is very high.”) (citation omitted); 
Ware v. State
, 62 S.W.3d 344, 351 (Tex. Ct. App. 2001) (recognizing “[a] grandparent may have an identical, or an even greater motive than a parent may have in obtaining a correct diagnosis for a child,” and holding the trial court did not abuse its discretion by admitting a grandparent’s statements under Rule 803(4)).

[¶20] The relationship between K.D.J. and Beth Johnson was sufficiently close to ensure the guaranty of trustworthiness inherent in N.D.R.Ev. 803(4) applied under the circumstances.  We conclude Beth Johnson’s statements were reasonably pertinent to the medical diagnosis and treatment of K.D.J.  Like K.D.J., Beth Johnson made the statements in response to Clapp’s questions prior to the physical examination.  Clapp testified she asked Beth Johnson the questions for purposes of diagnosis and treatment.  Therefore, we hold the nurse practitioner’s report was admissible under N.D.R.Ev. 803(4), and the district court did not abuse its discretion by admitting it into evidence.

[¶21] We do note, however, that Beth Johnson’s statement concerning Grant’s past drug use was arguably not relevant to K.D.J.’s diagnosis and treatment even if made in response to Clapp’s questioning.  Grant could have requested the State redact this particular statement, and he had ample opportunity to do so at the pretrial hearing and trial.  By failing to request redaction, but rather requesting this Court overturn the criminal judgment, Grant needlessly made the issue an all-or-nothing proposition.  Under the deferential standard of review for evidentiary matters, we decline to overturn the district court’s decision to admit the entire nurse practitioner’s report on the basis of this single questionable statement.  The normal remedy for an otherwise admissible document containing inappropriate information is redaction.

III.

[¶22] Grant argues there was insufficient evidence for the jury to convict him of gross sexual imposition.  At the close of the State’s case-in-chief, Grant moved for judgment of acquittal under N.D.R.Crim.P. 29.  He therefore preserved the issue of sufficiency of the evidence for appeal.  
See
 
State v. McAvoy
, 2009 ND 130,   8, 767 N.W.2d 874.  In 
McAvoy
, at   8, we outlined the standard of review in challenges to the sufficiency of the evidence:

[T]his Court views the evidence most favorable to the verdict and all reasonable inferences drawn from such evidence.  
State v. Wilson
, 2004 ND 51,   6, 676 N.W.2d 98.  The defendant must show the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt.  
Id.
  This Court will not weigh conflicting evidence or judge the credibility of witnesses; rather, we will only reverse a conviction if no rational fact-finder could have found the defendant guilty beyond a reasonable doubt.  
Id.

“The existence of conflicting testimony or other explanations of the evidence does not prevent the jury from reaching a conclusion the evidence is clear beyond a reasonable doubt.”  
State v. Krull
, 2005 ND 63,   14, 693 N.W.2d 631.

[¶23] The jury found Grant guilty of gross sexual imposition in violation of N.D.C.C.    12.1-20-03(1)(d) and 12.1-20-03(3)(a).  Section 12.1-20-03(1)(d), N.D.C.C., provides a person is guilty of gross sexual imposition if he or she engages in a sexual act with a minor under the age of fifteen.  Section 12.1-20-03(3)(a), N.D.C.C., provides gross sexual imposition is a class AA felony if the person committing the act is twenty-two years old or older and the minor is less than fifteen.  A sexual act is defined as “sexual contact between human beings consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any other portion of the human body and the penis, anus, or vulva . . . .”  N.D.C.C.   12.1-20-02(4).

[¶24] K.D.J. testified Grant touched her vagina with his fingers, mouth, and penis, and also touched her mouth with his penis.  “[T]he uncorroborated testimony of a child is sufficient to sustain a conviction of a sexual offense.”  
State v. Paul
, 2009 ND 120,   31, 769 N.W.2d 416.  In addition, nurse practitioner Clapp’s report stated K.D.J. described physical symptoms consistent with genital penetration, and K.D.J.’s description remained consistent when discussing the allegations with different persons.  Contrastingly, Grant testified he did not touch K.D.J. in a sexual manner.  Viewing the evidence in the light most favorable to the verdict, we hold there was sufficient evidence upon which the jury could reasonably base its verdict finding Grant guilty of gross sexual imposition.

IV.

[¶25] The criminal judgment states the district court entered judgment “upon a verdict plea of guilty” to the offense of gross sexual imposition.  Grant did not plead guilty to gross sexual imposition; the jury entered a verdict of guilty.  The criminal judgment should accurately reflect the proceedings and clearly provide the district court entered judgment upon a verdict of guilty.  Rule 36, N.D.R.Crim.P., allows a court to correct a clerical error in a judgment arising from oversight or omission.  However, “[u]nder Rule 36 . . . only the sentencing court may correct clerical error.”  Explanatory Note, N.D.R.Crim.P. 36.  Therefore, we remand the case to the district court with instructions to correct the clerical error in the criminal judgment.

V.

[¶26] We hold the district court did not abuse its discretion by admitting a nurse practitioner’s report into evidence, and the State produced sufficient evidence to convict Grant of the crime.  We affirm the conviction.  However, because the criminal judgment does not clearly state the jury entered a verdict of guilty, we remand the case to the district court for correction of the clerical error.

[¶27] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.